### PELZER, RODGERS & CO. v. HUGHES.

1. Interlocutory injunction is not a matter of right, but of grace, resting in the sound discretion of the judge; and such an order having been granted to maintain matters *in statu quo*, pending an action by creditors to set aside certain transfers and assignments as fraudulent, this court refused to vacate it.

2. The appointment of a receiver of property pending litigation, may be made by a judge at chambers; but the power of appointment is a delicate one and must be exercised with great circumspection, and if abused, may be corrected on appeal.

3. Except in the cases mentioned in section 2016, General Statutes, the court has no jurisdiction to appoint a receiver of an assigned estate at the suit of creditors who have not exhausted their legal remedies.

4. In action by unsecured creditors to set aside as fraudulent a deed of assignment for the benefit of creditors and a transfer of choses in action a few days prior to the assignment, it not being shown that the defendants were insolvent or that the property was in danger of being lost or materially injured, the Circuit Judge erred in appointing a receiver pending litigation, and in adjudging defendants (who had appealed) in contempt for failing to turn the property over to the receiver so appointed.

5. A Circuit Judge may, without consent of parties, refer a chancery case to vacate certain assignments for fraud, "to the master to take the testimony and report upon the issues of law and fact involved therein." In such case, neither party has the right to a submission of the issues to a jury.

Before ALDRICH, J., Barnwell, January, 1887.

The opinion states the case.

*Messrs. Skinner & Williams,* for appellants.

*Messrs. T. M. Mordecai* and *B. H. Rutledge,* contra.

October 18, 1887.   The opinion of the court was delivered by
MR. JUSTICE McGOWAN.   As well as we can gather it from the very confused Brief presented, the following is a condensed statement of the leading facts of the case :

E. E. Hughes, one of the defendants, being largely indebted to Pelzer, Rodgers & Co. and others, on December 14, 1886, made an assignment of what purported to be his whole property to H. W. Walker, avowedly for the purpose of paying his debts, directing the assignee to realize upon the property included in the assignment, and pay out the proceeds : first, the expenses attending the execution of the trust, together with the sum of five hundred dollars to his attorneys, for services in and concerning the premises ; and then, out of the residue, to pay all his creditors who should, within a reasonable time, file their claims, accept the assignment, and discharge the said E. E. Hughes from liability, if there should be so much for that purpose ; but if there should not be so much, then to pay the creditors ratably ; and if, after paying the expenses and all debts, there should be a surplus, to return the same to Hughes ; and if there should not be enough to pay all the creditors in full, then no payment to be made to any of the creditors, except he or they accept the same in full satisfaction and discharge of their several demands, &c.   The day after the execution of the said assignment, Walker, the assignee, sent a circular notice to the creditors to meet at Midway, S. C., on December 23, 1886, "to take such action in the appointment of an agent, as they might see fit."

On December 20, 1886, Pelzer, Rodgers & Co., in conjunction with other creditors of the said Hughes, filed the complaint in this case, against E. E. Hughes, W. B. Steedly, and H. W. Walker, charging that the said Hughes, only a few days before the execution of the aforesaid pretended assignment, with the intent to defraud his creditors, made a pretensive sale to Steedly of the best part of his assets, consisting of notes, bonds, mortgages, &c., amounting in value to nearly $8,000, for the greatly inadequate consideration of $3,230 ; and upon such pretended sale transferred the said choses to the said Steedly, which transaction was fraudulent and void, both under the statute of Elizabeth and the law of this State against fraudulent assignments, giving preferences; and also charging that the assignment to Walker a few days after the said transfer (which omitted the choses fraudulently and pretensively transferred as aforesaid), was also in the same manner fraudulent and void, &c., &c. The complaint prayed judgment against Hughes—that both the pretended sale to Steedly and the assignment to Walker should be set aside as fraudulent and void, and the parties named be respectively enjoined from proceeding to collect the notes, choses, &c., transferred to each of them ; and that a receiver should be appointed to assume control of and collect the same. The complaint was sworn to, and Judge Aldrich granted the plaintiffs a temporary restraining order, and that the defendants should show cause before him, on January 6, 1887, why said injunction should not be made perpetual and a receiver appointed. (For convenience we will call this "order No. 1.")

On January 4, 1887, the defendants answered the complaint on the merits, admitting that Hughes was insolvent, but denying each and every other important allegation of the complaint, and especially averring "that the choses in action, notes, bills, and all papers purchased by defendant, Steedly, from defendant, Hughes, were bought in good faith, for valuable consideration, and without any notice of the insolvency of Hughes," &c.

After answer filed, the defendants, on affidavits submitted, moved to dissolve the injunction, and after hearing argument, the judge, stating that he "did not propose to decide the merits," granted the plaintiffs an order on the 12th, which was filed on

January 14, 1887, to the following effect, viz.: 1. Refusing to dissolve the injunction "save and except only to permit the defendants to comply with the provisions of this order—commanding the immediate paying over and delivery of all the property, notes, &c., to the receiver now about to be appointed," &c. 2. Appointing C. Carroll Simms receiver—directing both Steedly and Walker, within ten days, to turn over to him as such receiver all the property of every kind which may have passed as aforesaid into their hands respectively from the said E. E. Hughes. 3. Granting leave to apply to the court for a reference to the master to report the testimony, &c. We will call this "order No. 2."

On January 15, the defendants served notice that they would move that certain issues of fact in the case should be submitted to the decision of a jury, at the next term of the court.

On January 20, the judge granted an order that, "Whereas the defendants are about to appeal from the order of January 14, 1887, it is therefore ordered, that said appellants do execute to the clerk of the court a bond or undertaking in the sum of one hundred dollars, with two sureties, &c., to the effect that the appellants will obey the order of the Supreme Court upon the appeal, upon the filing and approval of which as aforesaid all proceedings under the order of January 14, 1887, are hereby directed to be stayed." (The bond was given.) Order No. 3.

On January 21, the defendants served notice of appeal from the order of January 14, 1887, upon grounds which will be hereafter stated. On the same day the judge, upon a report of the receiver that the parties refused to turn over to him the choses, under the order of January 14, ruled the defendants to show cause on January 26, 1887, why they should not be attached for contempt of court in refusing to obey the order, requiring them forthwith to turn over to the receiver the notes, choses, &c., which had come into their possession as aforesaid. Order No. 4.

On January 26, the judge granted three orders, one revoking the order of January 20, granting a stay herein pending the appeal from the order filed January 14; another, referring the case to G. Duncan Bellinger, Esq., master, "to take testimony and report upon all the issues of law and fact involved therein;"

and still another, making the rule against the defendants for a contempt of court absolute *nisi*, as follows: "That unless the said defendants do respectively obey the provisions of the order of this court, dated January 12 (but filed January 14, 1887), on or before 12 o'clock m. of Tuesday next, February 1, 1887, the said rule be made absolute," &c.   The defendants on the same day filed a petition, recalling the attention of the court to the staying order, and praying that as they had appealed from the order of January 14, that said stay might be continued "upon their executing such bond as he might direct," which petition was "dismissed."

Defendants' exceptions to the order of January 14, 1887 :

"1. Because his honor erred in not considering the merits of the cause, under the affidavits submitted—this being a hearing of the return to the rule to show cause why the injunction should not be made perpetual, &c., by order made December 21, 1886.

"2. Because his honor erred in making said injunction perpetual on a hearing at chambers upon a rule to show cause.

"3. Because it was error after requiring security upon the issuing of the restraining order to continue such injunction without security.

"4. Because it was error in his honor to refuse to dissolve said restraining order, for the reason that no security was filed by plaintiffs according to rule of court.

"5. Because his honor erred in the said order of January 14, 1887, by giving in effect judgment to the plaintiffs, upon the prayers for judgment of the complaint, numbered 1, 2, 3, 4, 5, 6, 7.

"6. Because the defendants showed sufficient cause by affidavit and otherwise (on the return of the rule herein to show cause), why the said injunction should be dissolved.

"7. Because the plaintiffs did not show that they were entitled to have a receiver of said property appointed, and his honor's order appointing one was error," &c.

Defendants' exceptions to orders January 26, 1887 :

"1. Because his honor was without authority to refer the case to the master, thereby superseding the defendants' application to the court in term to submit the issues therein to a jury, notice of which had been regularly given.

"2. His honor erred in vacating the order of January 20, suspending further proceedings under the injunction order, January 14, the defendants having complied with the condition and given bond.

"3. His honor erred in refusing defendants' petition to stay proceedings under the order of January 14, upon their bond as directed.

"4. His honor erred in holding the defendants liable for contempt of the order of January 14, when it was suspended, and there was no testimony to show the defendants in contempt—no process served on them that they had disregarded, and they had fully excused themselves under their oaths.

"5. Because the order of January 14, requiring the defendants, Steedly and Walker, to deliver the documents and personal property in their hands, under lawful claims and title thereto, to a receiver, who was required to convert the same, was contrary to law, and the enforcement of such order by penal process was not warranted by law."

For several reasons the questions raised on this appeal are unusually embarrassing. In the first place the "Brief" is very far from perfect; and then the merits of the case have never been reached, but all the questions made are preliminary and relate to points of procedure, determined on the pleadings and affidavits, as to which the Circuit Judge has large discretionary powers. As we understand it, however, the principal questions controverted may be condensed into four : 1. Was it error of law in the judge to grant a provisional injunction, enjoining the defendants, Steedly and Walker, respectively, from making any sales, release, transfers, or other collections of the assets in their hands, until a decision upon the merits of the case ? 2. Was it error to appoint a receiver, with authority to take the said notes, mortgages, property, &c., out of the possession and control of said defendants, respectively ? 3. Was it error to adjudge the defendants in contempt of court for not turning over the choses, &c., to the receiver ? 4. Was it error to refer the case to the master against the protest of the defendants, who claimed the right to have certain issues of fact referred to a jury ?

In order to have a clear view of these questions, it will be

necessary to keep in mind the nature and objects of the action and of the defence made. The action was by several creditors united, whose debts were neither adjudicated nor secured, and one object seemed to be to recover judgment on these respective claims against the debtor, Hughes. But the judge at chambers having no right to render judgment did not undertake to do so, and that matter is not before us. The main object, however, manifestly was to set aside the alleged sale and delivery of the valuable choses of Hughes, the debter, to Steedly, as fraudulent and void; and as connected therewith, to have the assignment to Walker also declared void, and thus to reclaim all the property, notes, &c., as still belonging to the debtor, Hughes. The defendant, Steedly, claimed in the most positive terms that the choses in his possession were purchased by him *bona fide*, and for a valuable consideration paid. The assignment to Walker (after the services of the lawyers and the expenses of administration were paid) provided for a ratable distribution among creditors, including the plaintiffs, and we therefore suppose that the real gravamen of the action was to set aside the alleged transfer of the choses to Steedly, claimed by him as purchaser.

First. As to the order for a provisional injunction. No objection was made to the restraining order issued when the complaint was filed. The defendants were served with rule to show cause why a provisional injunction should not issue. In the mean time they had answered to the merits and given notice of an application to dissolve the injunction. Being before the judge in this double manner, he refused to dissolve, but ordered the injunction continued until the case could be heard upon its merits. Was this error? Injunction is defined to be a judicial process whereby a party is required to do or to refrain from doing a particular thing. It is, however, generally used (always before a decree upon the merits) to prevent a meditated wrong, and therefore is regarded more as a preventive than as a restorative or remedial process. "When during the litigation it shall appear that the defendant is doing, or threatens or is about to do, or procuring or suffering some act to be done in violation of the plaintiffs' rights respecting the subject of the action, and tending to render the judgment ineffectual, a temporary injunction may be granted

to restrain·such act." *Code*, section 240. The sole object is to preserve the subject of controversy in the condition in which it is when the order is made until an opportunity is afforded for a full and deliberate investigation. It cannot be used to take property out of the possession of one person and put it into that of another.

Injunction is not a matter of right, but of grace, resting in the sound discretion of the judge. The judge before whom the motion was made, and who had the right to decide it in the first instance, thought a *prima facie* case was made for a provisional injunction against both Steedly and Walker; and, considering the object of injunction and the character of the property involved, we are not prepared to say that therein he committed error of law, subject to be corrected by this court. "It should be borne in mind that a complainant may be entitled to a preliminary injunction, although his right to the relief prayed may ultimately fail. A court of equity will, in many cases, interfere by injunction to preserve property in *statu quo* during the pendency of a suit in which the rights to it are to be decided; and that without expressing, or often without having the means of forming, any opinion as to such rights.  *  *  *  In doubtful cases the court weighs the nature and extent of the injury which will arise to either party from the. granting or withholding of an injunction, and determines the question of equitable relief in the manner best calculated to promote substantial justice." 3 ·*Wait Act. & Def.*, and the authorities there cited—title "injunction"—pages 682 and 689.

Second. As to the appointment of a receiver. The appointment may be made by a judge at chambers. *Kilgore* v. *Hair*, 19 *S. C.*, 486. It is a stronger measure than that of an injunction, in that the effect is to transfer the custody of the property in controversy from a litigant to a third party under the direction of the court during the litigation. It is not so much in the nature of an attachment as of a sequestration. The proceeding generally is salutary in its operation, as tending to prevent loss and promote justice. It is, however, well settled that it is not allowable in every case, but is confined to those of a particular class, or classes. It is universally conceded, "that the power of ap-

pointment is a delicate one, and is to be exercised with great circumspection." Although the order is interlocutory and somewhat administrative in its character, and, in a certain sense, discretionary with the court or judge granting it, yet that is not an arbitrary discretion, but the determination, if not in conformity with well established rules, may be reversed on appeal. *De Walt* v. *Kinard,* 19 *S. C.,* 286 ; *Kilgore* v. *Hair, supra ; Milwaukee & Minnesota R. R. Co.* v. *Scutter,* 2 *Wall.,* 521.

The right to have a receiver appointed is an ancient one, but it has been formulated by the code as follows : "A receiver may be appointed by a judge of the Circuit, either in or out of court, before judgment, on the application of either party, when he establishes an apparent·right to property, which is the subject of the action, and which is in the possession of an adverse party, and the property, or its rents and profits, are in danger of being lost, or materially injured or impaired," &c.[1] After some discussion upon the subject it seems to have been reasonably well settled that as "a rule a receiver will not be appointed during the progress of a cause, unless there is the strongest reason to believe that the plaintiff is entitled to the relief demanded in his complaint, and there is danger that the property will be materially injured before the case can be determined." 5 *Wait Act. & Def.,* 356 ; 3 *Pom. Eq. Jur.,* 358, and notes. Although it would be improper, upon a preliminary motion, to inquire into or express any opinion as to the merits of the case, the terms of the rule indicated above seem to make it necessary upon an application for a receiver to take at least a general view of the scope of the pleadings and the issues made.

This is a suit in equity, and the appointment of a receiver appertains exclusively to that jurisdiction. When the receiver was appointed the plaintiffs had not obtained judgments on their demands, and, of course, had not exhausted their legal remedies against the debtor, Hughes; and therefore the judge had no jurisdiction to appoint a receiver, unless there was something in the case which made it exceptional. "Creditors who have neither lien nor title, and have not recovered judgments, are not entitled to an injunction and receiver in a suit to set aside an assignment

---

[1] Section 265.

or pretended sale by the debtor of his assets." *Johnson* v. *Farnum*, 56 *Ga.*, 144; 5 *Wait Act. & Def.*, 376. But the complaint prayed, among other things, special relief under chapter 72 of the General Statutes, which authorizes creditors, under certain circumstances, to attack and set aside as "void" a voluntary assignment, giving preferences to some creditors, "without first obtaining and entering up judgment against said debtor," &c. ; and so far as concerns a violation of that special act, the Circuit Judge undoubtedly had jurisdiction to consider the subject of appointing a receiver. See section 2016, General Statutes. Limiting, then, the inquiry to relief under the assignment act, were the plaintiffs entitled to the appointment of a receiver to take the property and choses out of the possession and control of the defendants ?

As to Dr. Steedly. He undoubtedly had possession of some choses which had belonged to the debtor, Hughes, but he claimed them not as assignee or trustee, but as absolute owner under an alleged purchase from Hughes for valuable consideration paid, and without notice of his insolvency. It did not appear that he was a creditor of Hughes. He had possession and *prima facie* title; and in such case, as Lord Eldon said in *Lloyd* v. *Passingham*, 16 *Ves.*, 69 : "The court must not only be satisfied of the existence of the fraud, but be morally sure, upon the hearing of the cause, the party would be turned out of possession." *Hoff. Prov. Rem.*, section 244. As to Walker, the assignee. He was at least a *quasi trustee*, and, under Mr. Pomeroy's third class of cases, in which a receiver may be appointed (3 vol., page 361), he was entitled to retain possession of the property, which could not be taken from him, unless shown to be guilty of some breach of trust. We do not understand that any such breach was charged against him, and he seemed to be making reasonable progress in the business when this action was commenced.

Besides, it was not shown that the property, either in the hands of Steedly or of Walker, was in danger of being lost or materially injured, without the intervention of a receiver. It is true that there was abundant allegation in the complaint that the sale to Steedly and the assignment to Walker were fraudulent.

and void; but that allegation was denied, and it is remarkable that neither in the complaint nor the affidavits submitted was it alleged that either of them was insolvent, or that there was danger of loss or injury to the property pending the litigation. On the contrary, it appeared in the affidavits, without contradiction, that they were both persons of good character.

Having respect for the Circuit Judge, whose duty it was to decide the point in the first instance, when the motion was made before him, we have hesitated to differ from him upon a question peculiarly within his judicial discretion; but conceiving it to be our duty, we have carefully reviewed the whole case and are constrained to hold that, according to the rules governing in such cases, there was no case made for the appointment of a receiver, and that such appointment, with authority to take possession of the property pending litigation, was error. This disposes also of the third question as to the contempt. The orders upon that subject are reversed.

Fourth. The only remaining question is whether it was error to refer the case to the master against the protest of the defendants, who claimed the right to have certain issues of fact referred to a jury. The issues in the case, certainly as to Steedly and Walker, are on the equity side of the court, which has no machinery for jury trials, and as a rule all questions, whether of law or of fact, are decided by the judge sitting as chancellor. If he desires the aid of a jury upon a question of fact, he may order an issue for that purpose merely to enlighten his conscience. This court has decided that section 274 (276) of the code specifies the classes of cases in which a jury trial may be demanded as a legal right. In all other cases it is discretionary with the Circuit Judge, and from his determination no appeal lies. *Rollin* v. *Whipper*, 17 *S. C.*, 32. The section referred to is as follows: "An issue of law must be tried by the court, as also cases in chancery, unless they be referred as provided in chapter 5 of this title. An issue of fact in an action for the recovery of money only, or of specific real or personal property, must be tried by a jury, unless a jury trial is waived," &c. We do not regard this an action either for the recovery of money only or of specific real or personal property.

The judgment of this court is, that the judgment of the Circuit Court be modified according to the conclusions herein announced, and that in all other respects it be affirmed.