7375

VIRGINIA-CAROLINA CHEMICAL CO. v. HUNTER.

1. PLEADINGS—VERIFICATION.—A defective verification of a complaint for the appointment of a receiver may be cured by affidavit.
2. RECEIVER—EXECUTION.—Where a showing is made to the effect that a farmer has disposed of large resources, professing to have nothing left, leaving his debts unpaid and sets his creditors at arm's length by refusing to give any account of his property or to take any interest in the satisfaction of their claims, the Court is warranted in drawing an inference that there has been a fraudulent disposition of debtor's property warranting the appointment of a receiver without *nulla bona* returns on execution.
3. IBID.—An agent of a corporation seeking the appointment of a receiver who is actively engaged in pressing its claims against the debtor should not be appointed the receiver of his property.

Before KLUGH, J., Laurens, December, 1908.   Modified.

Action by Virginia-Carolina Chemical Company against G. Wash Hunter, Sarah Ellen Evans and Cole. L. Blease. From order appointing a receiver, defendants appeal.

*Messrs. Blease & Dominick,* for appellants, cite: *Facts here do not warrant appointment of a receiver:* Code of Civil Proc., 265; 34 S. C., 77; 32 S. C., 134; 19 S. C., 286. *Who appointed receiver:* 23 Ency., 1032.

*Messrs. Grier & Park,* contra, cite: *Court has jurisdiction:* 27 S. C., 417; 80 S. C., 80. *What creditor must show:* 55 S. C., 253; 46 S. C., 166; 22 S. C., 111; 42 S. C., 482; 37 S. C., 237; 41 S. C., 326; 33 S. C., 541; 37 S. C., 238; 18 S. C., 526; 42 S. C., 487; 40 S. C., 1. *Who may be appointed receiver:* 23 Ency., 1034; 88 Va., 338; 19 S. C., 486; 72 S. C., 178.

November 23, 1909.   The opinion of the Court was delivered by

MR. JUSTICE WOODS. This is an appeal from an order appointing a receiver of the property of G. Wash Hunter, at the instance of the plaintiffs, bringing the suit for themselves and all other creditors who may come in and contribute to the expenses of the action.   The question is, whether the complaint and the affidavits on the part of the plaintiff and the defendants presented such a case to the Circuit Judge as warranted the appointment of a receiver, either under the assignment act of this State or on the general principles of law as to fraud.   These stated in short, are the allegations of facts made in the complaint: Indebtedness by Hunter to the plaintiff of $1,428.90, and interest represented by two notes, dated 27th April, 1908, and 23d July, 1908, due 15th November, 1908, which Hunter refused to pay; indebtedness to other unsecured creditors named, amounting to $5,200, and large indebtedness to other persons; the execution by Hunter of mortgages to his sister, Mrs. Evans, which are alleged to be without adequate consideration and void under the statute of Elizabeth and under the assignment act as follows, for $8,000 on 625 acres of land, dated 18th October, 1907, and recorded 25th October,

1907; for $2,000, on 170 acres of land, dated 19th November, 1907, and withheld from record until 10th November, 1908; for $1,250 on 800 acres of land, dated 6th November, 1908, recorded 10th November, 1908; the execution of a mortgage to Cole. L. Blease, for $1,000 on 800 acres of land, 19th November, 1908, recorded 27th November, 1908, alleged to be invalid as a preference under the assignment act; Hunter's disposition of "the greater portion" of a large crop made on the land covered by the mortgages, and his failure to apply the proceeds to the payment of debts made in the production of the crop, and his placing the proceeds entirely beyond the reach of creditors; the claim by Hunter that he had transferred all his live stock to his sister, Mrs. Evans, and the entire want of consideration of such transfer; a statement by Hunter that he had no money derived from his crop or otherwise, and no property from which his creditors can collect their debts, and that he is totally insolvent; Hunter's failure while refusing to pay his debts to give any account of the disposition of the proceeds of his crop of the year 1908; the actual insolvency of Hunter, if the mortgages of his land and the transfer of his live stock are allowed to stand; the conviction of Hunter of manslaughter, his sentence of eight years to the penitentiary, and his design to reduce all his assets to cash and to leave the State for parts unknown in case his appeal should fail; the purpose of Hunter to place other liens on this property in fraud of the rights of creditors; the great value and high state of cultivation of the lands, and the apprehension of the plaintiff that the lands and other property will fall under the management of Mrs. Evans, and that she will use them for the benefit of Hunter without regard to the rights of creditors.

In the verification made by James M. Blair, agent of plaintiff, it is said that all the allegations contained in the complaint are made on information and belief, except the allegations of the incorporation of the plaintiff and the

indebtedness of the defendant to the plaintiff. The complaint is silent as to the sources and character of the information from which affiant's belief is derived; but the verification contains this statement on the subject: "that the source of information and grounds of belief upon which the other allegations of the complaint are made are information derived from the clerk's office at Laurens, and correspondence of the said defendant, G. Wash Hunter, and statements made to deponent by the said defendant, G. Wash Hunter, personally, in a conversation recently had with said defendant about this debt." There is nothing to show that any information was derived from the clerk's office, except the fact of the recording of the several mortgages set out; the contents of the letters of the defendant are not stated and the nature of the conversation between the affiant and Hunter is not disclosed. Hence, we think it is true, as contended by counsel for appellants, that if we look to the complaint alone sufficient facts are not brought before the Court from which the Court could reach its own conclusion that the inferences and conclusions stated in the complaint were well founded. There are, however, statements of fact in the separate affidavits submitted tending to support the charges set out in the complaint. The allegations of substantive facts in these affidavits appear in the following extracts from the affidavit of J. M. Blair, the agent of the plaintiff:

"That this deponent recently paid a visit to the place of business of the said defendant, G. Wash Hunter, and demanded of him payment of the said notes; that the said defendant told deponent that he had not paid the notes and could not pay them; that he told deponent he was 'broke,' and was unable to pay his debts, and in a letter written by him, he further stated that his creditors were going to sell him out, and that he would be unable to make payment of the amounts he was due to various people; that he further told deponent that he had not paid any of his debts for the current year, and that he had disposed of his cotton crop

already, and that his live stock had been made over to his sister, a co-defendant, Mrs. Sarah Ellen Evans; that he had no property that was not covered by liens of one kind and another; that deponent failed to get any satisfaction whatever from defendant, or any promises looking to the payment of said indebtedness; that said defendant, from his own statement, is converting all of his property into cash and is not applying it to the payment of his debts * * *." "That heretofore the said defendant has borne a reputation of being prompt in meeting his obligations, and has always paid his obligations with punctuality and promptness; that this plaintiff has heretofore had large dealings with the said defendant, and he has always met his obligations heretofore, and the defendant now gives no reason whatever why he is converting his property and failing to pay any of his obligations; that he stated to deponent that the large mortgage indebtedness was incurred in raising funds to pay counsel fees in defense of himself during the recent trial, which resulted in his conviction for manslaughter." "* * *; that the said defendant, in a letter to a representative of the company, has declared himself insolvent and unable to meet his obligations, and stated that the company could take whatever action they thought best—that so far as he was concerned, he had nothing to offer." "That Mrs. Sarah Ellen Evans is a near relative of the defendant, to wit, his sister, and, according to the statement of the defendant, G. Wash Hunter, owns practically all of his visible personal property and has large liens on all of his real estate."

The defendants had not answered when the receiver was appointed. By their affidavits, Hunter and Mrs. Evans deny any fraud, and allege that the mortgages were given for money advanced and in payment for some of the land now owned by Hunter; that Hunter has never transferred his live stock to Mrs. Evans, but has mortgaged it for a debt to her. Hunter, under oath, denies insolvency, alleging his property to be of sufficient

value to pay all his debts, and that he has no intention of leaving the State. He admits that he has been sued by some of his creditors, and says he has not paid them for lack of money. He denies that he executed the mortgages for the purposes of preferring the mortgagees in violation of the assignment laws of the State; and alleges that the mortgages were given in good faith "for valuable consideration and in order to secure the payment of money borrowed to pay for some of the land which he now owns and for the interest of others in some of the land which he now owns and for money and funds used in the payment of counsel fees in the case of the State *v.* G. Wash Hunter, which was tried five different times, and is now on appeal in the Supreme Court of the State of South Carolina." Mrs. Evans denies that she took the mortgages knowing Hunter to be insolvent, or with any intent to defraud creditors or to violate the assignment law of the State; that on the contrary, she believes Hunter to be solvent and has no intention of foreclosing her mortgages. In his affidavit, Cole. L. Blease, admits he holds the note and mortgage for one thousand dollars, mentioned in the complaint, and alleges: "That he is a creditor of G. Wash Hunter, and that the amount of the indebtedness is one thousand dollars, and will be more if the deponent lives to render the services which he proposes to hereafter perform for said Hunter in the case of the State *v.* G. Wash Hunter, now pending in the Supreme Court of this State, and in other matters." And he denies the allegation of the complaint that "the defendant, Cole. L. Blease, knowing the financial condition of the defendant, G. Wash Hunter, and knowing that on account of the purported debts to his sister, Mrs. Sarah Ellen Evans, that the said G. Wash Hunter, if the said debts were allowed to stand, would be totally insolvent, and with a view of obtaining a preference, secured from the said defendant, G. Wash Hunter, the execution and delivery of this mortgage." And he denies that the mort-

gage to him was made in violation of the assignment laws of the State.

We have set out the showing on each side with some fullness because the case involves, not only a serious issue to the parties, but also an important principle of law relating to the appointment of receivers. In addition to providing for special conditions in which receivers may be appointed, section 265 of the Code of Procedure gives the old practice the force of a statute by the enactment that a receiver may be appointed "In such other cases as are now provided by law, or may be in accordance with the existing practice, except as otherwise provided in this Code of Procedure." The first inquiry is, whether the record shows a case warranting the appointment of a receiver, under the general jurisdiction and practice of the court of equity aside from the special provisions of the Code of Procedure and the assignment act. The taking of property from the hands of owners and placing it in the hands of a receiver has been always regarded by the Courts a severe remedy to be applied with great caution, and the statute of 1901 expressly provides for appeal from an interlocutory order for the appointment of a receiver.

In *Pelzer* v. *Hughes,* 27 S. C., 408, 3 S. E., 781, it was held that a court of equity cannot entertain a motion on behalf of creditors to have a receiver of the property of a debtor appointed, "unless there was something in the case to make it exceptional." As is intimated in this case, and in the case of *Whilden* v. *Chapman,* 80 S. C., 84, proof of insolvency and nothing more would not be sufficient. But the very lucid opinion of Chief Justice McIver, in *Miller* v. *Hughes,* 33 S. C., 541, shows that when a debtor is trying to defeat his creditors by an act or course of conduct which indicates moral fraud,—a conscious intent to defeat, delay or hinder his creditors in the collection of their debts—then a court of equity will grant any relief within its jurisdiction appropriate and effective to protect creditors against the fraud, without requiring the creditor to run the risk of losing

his debt from the delay of obtaining judgment and a return of *nulla bona* on the execution. This case was followed and approved in *Meinhard* v. *Youngblood,* 37 S. C., 231, 15 S. E., 950; *Sires* v. *Sires,* 43 S. C., 266, 21 S. E., 115; *Bank* v. *Dowling,* 45 S. C., 677, 23 S. E., 982. It may be that the Court would grant such relief before judgment and execution without evidence of moral fraud, where such action seemed essential to prevent injustice, but on that point we express no opinion.

The inquiry, then, is, whether the plaintiff, who has not yet reduced its claim to judgment, has made a *prima facie* showing that the defendant, Hunter, has planned so to use and dispose of his property as to defeat the claims of his creditors. The mortgage for $8,000 was given and recorded before the debts to the plaintiff were contracted, and no charge is made against Mr. Blease of moral wrong in taking his mortgage for $1,000. As to the mortgage for $2,000, which was kept off the record for twelve months, the mortgage of $1,250 covering the whole of defendant's lands, and the mortgage and transfer of his entire live stock, all given by Hunter to his sister, Mrs. Evans, it is significant that while the charge of fraud and want of consideration is expressly made, the counter affidavits with respect to consideration are very indefinite. Mrs. Evans gives this account, which contains little information, as to the consideration for these papers: "That the consideration of this said mortgage, as well as of all the other mortgages given her by the said G. Wash Hunter, was for actual cash money borrowed from her from time to time by the said G. Wash Hunter, and also to secure the payment to her for certain amounts which were due and owing to this deponent by G. Wash Hunter on account of a certain interest in real estate owned by her. That she is informed and believes that a great portion of the said money was borrowed to take up certain claims held by others on the real estate of G. Wash Hunter, one of which claims being held by 'Bailey's Bank, at Clinton,' and amount-

ing, in the aggregate, to nearly five thousand dollars; and deponent is further informed and believes that a great portion of the said amount went towards the payment of the expenses of the five trials of the said G. Wash Hunter, charged with murder. Deponent is not the owner of the personal property of the said G. Wash Hunter, but she holds a mortgage on the same, which was duly executed on the 19th day of November, 1907. Deponent further deposes and swears that all of said mortgages were executed for proper and adequate consideration, and that the same were executed for the sole purpose of properly securing the large amounts which were due her by the said G. Wash Hunter." Hunter's affidavit is still more vague, giving no account of the nature of the consideration, nor of the disposition of the money received from his sister. But assuming the validity of these mortgages, without deciding the point, Hunter then appears in this situation. He is a farmer, owning a very valuable farm, running a large business with ten laborers as share croppers. During the year from November, 1907, to December, 1908, he gives mortgages to his sister, exclusive of the mortgage on the live stock, aggregating $8,250. He becomes indebted within the same period, by his own admissions, to the plaintiffs for $1,428.90 for fertilizers, and to J. W. Copeland $200. These amounts aggregate nearly ten thousand dollars. Of this sum no account is given, except the statement by Mrs. Evans that $5,000 was paid on a debt to the "Bailey Bank." This leaves unaccounted for $5,000, without any evidence that Hunter has acquired any additional property. No doubt counsel fees in his trials in the Court of General Sessions have been large, but there is no reason to suppose they could have absorbed this large sum in addition to the mortgage held by Mr. Blease for $1,000. In addition to this, he disposed of his entire crop of cotton. Assuming that Hunter made no money on his crop, his affidavit leaves no room for doubt that his loss, if any, was very

small, for he thus speaks of the proceeds of the crop: "The amounts received by deponent were scarcely sufficient, and were not sufficient to pay said expenses, so that deponent has lost a considerable sum of money in the operation of the said farm, over and above the amounts received by him for the said crops." The plaintiff's debt was for fertilizers, and embraced in the expenses of the crop. Certainly, there is nothing to show that Hunter lost the money borrowed from his sister, and the entire sum promised plaintiff for the fertilizers. Thus the showing before the Court tends strongly to indicate that Hunter had in his hands at the close of the year from the money received on his mortgages and the proceeds of his crop, a very considerable sum of money. In this condition, he meets his creditors with the statement that he is "broke," has no money, that his entire property is covered by mortgages, that he has nothing to offer, and that they may take whatever course they see fit.

When a business man, merchant or manufacturer or farmer, disposes of large resources, and then professing to have nothing, leaves his debts unpaid, and sets his creditors at arm's length by refusing to give any account of his property or to take any interest in the satisfaction of their claims, the Court is warranted in drawing the inference that there has been a fraudulent disposition of the property. These, it seems to us, are the facts here. They may all be explained away, and the defendant, Hunter, may, on the trial exculpate himself entirely. All that we hold now is, that a *prima facie* case of fraudulent disposition was presented to the Circuit Judge, warranting the appointment of a receiver. This conclusion makes it unnecessary to discuss the assignment act.

By the last exception, the defendants complain that the Circuit Judge erred in appointing "the agent of the plaintiff as receiver, and in not allowing and receiving any showing from the defendants-appellants as to who should be ap-

pointed such receiver." The rule is, that the Court ought to appoint a receiver entirely impartial. There may be cases requiring a departure from this rule, but we do not think this is one of them. Nothing is alleged against the personal character or fitness of Huff, who was appointed receiver, but he was one of the agents of the plaintiff, actively pressing its claims against the defendant, Hunter, and seeking the appointment of a receiver of his property. No special fitness or peculiar circumstances are shown which might justify the appointment of one so closely connected with one of the parties in interest. For these reasons, the present receiver should be removed if the defendants should be advised it is to their interest that some other person should be appointed in his stead. It may be well to say that, of course, no action of the present receiver which was proper for a receiver to take, would be invalidated by the change.

The judgment of the Circuit Court is affirmed, with leave to the defendant to move before that Court for the removal of the present receiver and the appointment of a disinterested person in his stead.