13422

SOUTHERN TRUST COMPANY v. CUDD

(164 S. E., 428)

*Mr. L. G. Southard,* for appellant,

*Messrs. Nicholls, Wyche & Russell,* for respondent.

June 4, 1932.

The opinion of the Court was delivered by MR. ACTING ASSOCIATE JUSTICE W. C. COTHRAN.

In the consideration of this case we are forcibly impressed with a statement made by the late Chief Justice Gary to the effect that the trial of cases by affidavits alone is always most unsatisfactory.

Here we have the suit brought by Southern Trust Company against J. J. Cudd asking judgment upon certain notes aggregating $2,834.65; the suit being commenced on January 16, 1932. The suit was framed as a creditor's bill, being brought on behalf of the plaintiff and all other creditors of the defendant who may come in and contribute to the expenses of this action. A receiver *pendente lite* was asked, and a rule to show cause was obtained from Judge Sease. The defendant made answer to the complaint and return to the rule to show cause, admitting by his answer the debt due the plaintiff and denying in his return the necessity for the appointment of a receiver. After hearing argument, Judge Sease granted the motion for the appointment of a receiver, fixed his bond, and prescribed his duties. From this order the defendant has appealed, and the sole question before this Court is whether or not there was error on the part of Judge Sease in appointing a receiver.

After alleging its debt, made up of various items, the plaintiff in its complaint then proceeds to set forth the grounds upon which it asks for a receiver. Paragraphs 3 and 5, quoted below, set forth the main contentions of the plaintiff, and they are as follows:

"3. That upon information and belief, in addition to this plaintiff, the defendant J. J. Cudd is heavily indebted to numerous other creditors, who are pressing the payment of their obligations, and either already have, or are now con-

templating the institution of legal proceedings in an attempt to secure judgments against the said defendant; that the said defendant, according to this plaintiff's present best information and belief, is insolvent and a fair value of his assets is wholly insufficient to liquidate and pay off his said debts and obligations; that all creditors know or should have reasonable cause to believe now that the said defendant is insolvent; that unless the institution of such actions can be restrained herein and all creditors protected by the appointment of a receiver, such creditors as may the more speedily institute their said action and procure their judgments will be enabled thereby to procure illegal preferences in the payment of their debts over other creditors of like rank and priority and in contravention of the provisions of Sections 5511, 5512 and 5513 of the Civil Code of South Carolina (1922), commonly known as the Assignment Statutes, and the necessary and inevitable result of such creditors recovering and obtaining judgments against the said defendant, as the defendant knows, and as the creditors themselves know, or have reasonable cause to believe, and obtaining payment of said judgments through executions is that such creditors are thereby enabled to obtain a preference over other creditors of said defendant, contrary to law."

"5. That the defendant J. J. Cudd is the owner of considerable property, consisting both of farm land and of improved city property, and that the sale of such property under an execution sale would be to sacrifice the same and dispose of the same at a gross under-valuation, and thus the property to which all creditors alike must look for the payment of their obligations would be sacrificed to the great detriment of all creditors, if the same were sold under an execution sale, and such procedure would operate as a wasteful dissipation of the properties of the said defendant, and would enable such creditors as might satisfy their obligations through the said procedure to obtain, as alleged above, an illegal preference in the payment of their obliga-

tions; and that it is to the advantage and for the benefit of all creditors of said defendant, and that it is necessary in order to preserve and properly protect the said properties, that a receiver be appointed for the properties of the defendant, to the end that the same may be protected and preserved for all creditors alike, and that illegal preferences on the part of any creditors may be prevented, and that such properties may be sold in an orderly fashion at such time or times as may appear advantageous through a receiver of this Court instead of through the over-speedy method common to execution sales, especially since sales of real estate at this time during the present economic depression could not result other than in a gross sacrifice at a highly under-valued price of properties of great value."

In addition to this, the plaintiff alleges that a tract of land, very valuable, has recently been conveyed by the defendant to Furnace Land Company for the sum of $2,000.00, and that Furnace Land Company is a corporation owned by the defendant and his wife as sole stockholders. It further alleges the existence and record of certain real estate mortgages made by the defendant, aggregating at least $29,-500.00, and that judgments were entered against the defendant in a considerable amount, the return of the defendant showing that these judgments amounted to nearly $2,-000.00. Debts of upward of $40,000.00 were thereby set out in the complaint. There was no allegation in the complaint as to what property was owned by the defendant; the complaint merely stating that, upon information and belief, the defendant was insolvent.

The answer and return of the defendant admitted the debt due the plaintiff. Full details were gone into relative to the debts. Denial was made of the allegations that the defendant was insolvent; that he was being pressed by his creditors; that a receiver was necessary; or that the defendant was guilty of any fraud, unlawful preference, or other unlawful conduct. Allegations were also made as to the de-

sire of the plaintiff and of its parent, the First National Bank, the president of both institutions being the same person, to harass and oppress the defendant. The allegation was also made that the land conveyed to Furnace Land Company was mortgaged beyond its present value.

The very important statement was made in the return that the defendant had property valued at upwards of $800,-000.00, and that his direct debts were not half of this amount.

Had testimony been taken much more light could have been shed upon this controversy, but we are forced to decide the issues upon verified pleadings and a few affidavits, which, as stated at the outset of this opinion, is a most unsatisfactory way to determine causes.

Before entering into a further discussion of this appeal, we may say that we fail to grasp the eagerness of the plaintiff for the appointment of a receiver. Its debt of less than $3,000.00 was admitted by the answer, and judgment at once could have been taken on the pleadings. Execution could have long since been issued, and the plaintiff could have realized its debt out of the property of the defendant, which, according to the uncontradicted return of the defendant, is worth vastly more than all indebtedness.

Section 584, Code of 1932, sets forth the five grounds for the appointment of receivers and the fifth is the only one applicable to this case. The very elaborate argument of the attorney for the appellant, dealing with the Assignment Act, the Statute of Elizabeth, the rights of creditors, etc., has been carefully considered by the Court, but we think an equitable decision of the main question involved in the appeal can be reached without the necessity of resorting to a prolonged discussion of these positions.

That the power to appoint a receiver is inherent in a Court of equity is fully realized and approved. *Pelzer v. Hughes,* 27 S. C., 408, 3 S. E., 781. Also that the matter of ordering a receivership is very much

within the discretion of the Circuit Judge (*Ex parte Citizens' Exchange Bank of Denmark,* 140 S. C., 471, 139 S. E., 135), is likewise well realized. We further realize that the exercise of that discretion must not lightly be disturbed. The books are full of cases holding that the appointment of a receiver is a drastic remedy and should be exercised with caution and circumspection. These principles of law are firmly established by all of the decisions. When, then, if ever, will that discretion of the Court of equity be nullified? Only when it is manifest error of law. *Peeples v. Agricultural Loan Ass'n,* 156 S. C., 429, 153 S. E., 283. Our inquiry is therefore addressed to this subject.

It appears from the record before us that the complaint is a creditor's bill brought by a creditor who is due less than $3,000.00 out of a total indebtedness of $400,000.00, and that no other creditor has joined in the cause. Very similar is the situation to that existing in the case of *Peeples v. Agricultural Loan Association,* 156 S. C., 429, 153 S. E., 283, 285, where the Court held that the facts alleged in the complaint taken alone would perhaps justify the appointment of a receiver, but it was proper for the Circuit Judge to consider facts alleged in the answer. The opinion in this case then says:

"While the appellant brought the suit in behalf of all the creditors and stockholders of the corporation, it appears that he alone out of over two thousand stockholders wished a receivership. The only creditor, Federal Intermediate Credit Bank of Columbia, seemed to be satisfied at the way the business of the corporation was being managed, and did not join in the request for the appointment of a receiver. There was nothing to show, either by evidence or any allegation of the complaint, that the appellant had sought, through the officers or stockholders of the corporation, any liquidation of its affairs, or any change in the personnel of the managing officers.

"Receiverships are sometimes expensive affairs to creditors and stockholders of corporations. Receivers have to be paid commissions, and lawyers desire, and are sometimes entitled to receive, good fees for representing receivers. The assets in the hands of the receivers are sometimes liquidated too quickly for the good of the stockholders and creditors of the corporation. The Circuit Judge had to take all these matters, as well as others to which we have referred, into consideration."

In addition to the consideration of facts set forth in the answer, consideration should likewise be given to the financial conditions of the times in which we now live. Possibly never before in the history of the world have depression and unrest existed to such a marked degree as at present. We of the United States have never known like conditions to continue for such a length of time. Financial confidence seems completely lost; our men of means are unable to obtain money for any purpose and unwilling to invest what they already have; our banks, those few now surviving, have lost confidence in the ability of borrowers to repay their loans; our State is fearfully involved in the universal condition of inability to pay. An even sadder picture could be drawn of the poor, the unemployed, but this would serve no good purpose.

In the present case we have a man who evidently owns a great deal of property but little cash. Under ordinary conditions he should have a surplus of nearly half a million dollars after the payment of all of his debts, but at present he finds himself with the great majority in his inability to raise cash. Many, many others in this State are in a similar plight. Should our Courts throw wide their doors to suits of this nature, what man could escape being a defendant in a similar suit? Wherein lies the equity of taking away from a citizen, in these perilous financial times, all of his property and giving it to a receiver with the vain hope that the re-

ceiver can make a success of managing it for the benefit of all while burdened with costs, fees, and commissions?

Further, in the case of *Pelzer v. Hughes,* 27 S. C., 408, 3 S. E., 781, the Court holds that a receiver should not be appointed during the progress of a case unless it is made to appear that the rights of the plaintiff might suffer before he could obtain a judgment. As we have heretofore pointed out, the relief to which the plaintiff was entitled, to wit, a judgment, could have been obtained on the pleadings as soon as the answer and return were filed.

After a careful consideration of every phase of this case, we conclude that the Circuit Judge was in error in adjudging the return of the defendant to be insufficient and in appointing a receiver.

The judgment of this Court is that the return of the defendant is deemed sufficient, and the order of the Circuit Court appointing a receiver is reversed.

MR. CHIEF JUSTICE BLEASE and MESSRS. JUSTICES STABLER, CARTER and BONHAM concur.

MR. CHIEF JUSTICE BLEASE (concurring) : I heartily concur in the opinion of Mr. Acting Associate Justice Cothran. Let me add these brief observations :

Our Courts should take judicial cognizance of the present distressful business and financial situation. I can well conceive how a receiver should be appointed for an individual, heavily in debt, who is attempting to defraud his creditors, or who is wasting in extravagant living his income from his labor and property at the expense of creditors who have trusted in his honor. But the Courts should be slow to force into receivership one who is doing the best he can to meet his honest obligations, who is dealing fairly with his creditors, and who is not throwing away his money and property in riotous living. Naturally, I like to see the members of our bar get fair fees for their services in representing receivers. Fees of this character, however, should not be paid at the expense of creditors and of the debtors

when it may be fairly assumed that the debtor may attend to his own affairs better than they could be attended to by a receiver. And, generally, a man who is able to accumulate property can do more to preserve it than a receiver who has not the same personal interest as the owner. In the times through which our country is now going, there should be full, complete, and honest co-operation on the part of every debtor and his creditors, with the purpose in view of trying to help each and every one interested, with no one seeking to gain undue advantage over the other. It is especially important in these trying days that every reasonable effort be exercised to save, and not to sacrifice, the homes of our people. The General Assembly at its last session, by some legislative enactments, has sought to do this, and the Courts of equity, in which matters relating to the homes of the people are so often heard, should co-operate in carrying out the legislative policy. Let the home owner, especially one who is honestly and frugally trying to save his home, feel that equity will aid and not injure him.