14692

TOWLES ET AL. v. SOUTH CAROLINA PRODUCE ASS'N

(197 S. E., 305)

*Messrs. M. L. McCrae, Waring & Brockington* and *John I. Cosgrove,* for appellants,

*Messrs. Augustine T. Smythe* and *John P. Grace,* for respondent,

May 29, 1938.

The opinion of the Court was delivered by MR. JUSTICE BAKER.

It being admitted by appellant that under Section 7725 of the Code, it is within the discretion of the Court whether to adjudge a dissolution of a corporation, and appoint a Receiver or Receivers therefor for the purpose of winding up its affairs, and distributing its assets, the only question necessary to a decision of this case is: Did the trial Judge in refusing to adjudge a dissolution of respondent corporation, and appoint a Receiver or Receivers to liquidate it, commit such an abuse of discretion as to amount to error of law?

The pertinent portions of said Section 7725 are as follows:

"When stockholders owning one-fifth or more in amount of the paid up stock of any corporation organized under the laws of and doing business in this State, * * * apply in term or vacation of the judge of the Circuit Court holding the courts for the county in which the principal place of business of the corporation is situated, by petition containing a statement that for three years next preceding the filing of the petition, which time shall begin to run from three years after it has begun business, the net earnings of the corporation have not been sufficient to pay in good faith any annual dividend upon the said stock of the corporation, over and above the salaries and expenses authorized by its by-laws and regulations, * * * and that they desire a dissolution of the corporation, the judge shall make an order requiring the officers of the corporation to file in court

within a reasonable time, inventories * * *. If it appears to the court that the statements contained in the petition are true, the court may adjudge a dissolution of the corporation and may appoint one or more receivers who shall have all powers of receivers conferred by this article for the winding up of the affairs and distributions of the assets of the corporation. * * *"

Paragraph 4 of the complaint reads:

"That for a period of three (3) years next preceding the filing of this Petition (which time begins to run more than three (3) years since said corporation has begun business), the net earnings of said South Carolina Produce Association have not been sufficient to pay in good faith any annual dividend upon the said stock of the corporation, over and above the salaries and expenses authorized by its by-laws and regulations."

Issue having been joined, it was ordered:

" * * * that this cause be and the same is referred to W. McG. Morrison, Esq., Master of this Court, to take the testimony and to hear and determine all issues of law and of fact arising under the petition and return herein, and to report the same to this Court with all convenient speed, with leave to report any special matter.

"It is further ordered, however, that the Master shall first take testimony as to whether or not the allegations of Paragraph Four of the petition herein are true, confining the taking of the testimony entirely to that issue and shall, as soon as may be, file with this Court a special and preliminary report upon this issue alone."

The action was commenced in November, 1935, and the fiscal years to which the testimony was directed, were for 1933, 1934 and 1935.

The Master reported as a finding of fact, that the allegations of Paragraph 4 of the petition were true.

Respondent excepted to the report of the Master, alleging error in not finding "that during the years 1933 and 1934 the net earnings of respondent were sufficient to pay in good

faith an annual dividend upon the stock of the respondent over and above the salaries and expenses authorized by its by-laws and regulations."

The testimony shows that for the fiscal year 1933, respondent had a total income of $58,860.12, and operating expenses of $37,907.29. For that year, it first charged off $1,483.68 depreciation, and losses sustained during that year $79.11, leaving a balance of $19,390.04. It did not declare a dividend, but charged off losses for previous years greatly in excess of the earnings for 1933. For 1934 the total income was $71,467.92. The total operating expenses were $47,731.11. From the income there was deducted as depreciation $1,303.02, and losses sustained in 1934 of $4,777.09, leaving a balance of income over expenses, depreciation and losses for that year $17,656.70. A dividend for that year was not declared, but losses in years prior to 1933 in excess of the earnings for 1934 were charged off. There is a conflict in the testimony as to earnings, if any, for the fiscal year 1935, but even in normal times, we gather from the testimony that in the business in which respondent is engaged, it cannot be expected to make a profit every year.

The trial Judge sustained the Master in his findings, correctly holding:

"The terms 'net profits' or 'surplus profits' may be defined as what remains after deducting from the present value of all the assets of a corporation the amount of all liabilities, including the capital stock, in other words, that which remains as the clear gain of a corporation, after deducting from its income all the expenses incurred and losses sustained in the conduct and prosecution of its business. A corporation can in good faith pay a dividend out of 'net earnings' as thus defined, or out of a surplus theretofore earned and established. And a corporation cannot in good faith pay a dividend out of capital assets, or when its capital is impaired, or when to do so would reduce its capital assets." Citing authorities.

But as stated, the only question necessary to a decision of this appeal, is: Did the trial Judge commit an abuse of discretion in refusing to dissolve respondent, and appoint a Receiver?

In passing upon this, we keep in mind "that an adjudication of a receivership is a harsh and drastic remedy, one to be granted only with great caution." See *Penn Mutual Life Ins. Co. v. Cudd et al.*, 172 S. C., 88, 91, 172 S. E., 787, 788, and cases therein cited.

As stated by Judge Grimball, "Of course majority stockholders, by their vote, are given the right by law to the appointment of receivers and to a dissolution of the corporation. But neither under the general law of corporations nor under this section of the Code have minority stockholders any such right as a matter of course. The section of the Code invoked in these proceedings leaves the issuing of such orders to the discretion of the Court upon a consideration by the Court of the entire record of the business history and present condition of the corporation."

While this statute was undoubtedly intended to afford minority stockholders a method of relief against mismanagement of a corporation by majority stockholders, or the suspension of dividends for the purpose of freezing out minority stockholders, or depressing the market value of the stock of the corporation, it was never intended that the mere fact that a corporation could not pay a dividend for three years, time to be computed from three years after it has begun business, would *ipso facto* entitle minority stockholders to have such corporation dissolved, and a Receiver appointed therefor.

As it did to the trial Judge, the principle stated by Mr. Chief Justice Blease in his concurring opinion (denominated an "observation" by him) in the case of *Southern Trust Co. v. Cudd,* 166 S. C., 108, 116, 117, 164 S. E., 428, appeals very strongly to us. We quote (page 430):

"Our courts should take judicial cognizance of the present distressful business and financial situation. I can well con-

ceive how a receiver should be appointed for an individual, heavily in debt, who is attempting to defraud his creditors, or who is wasting in extravagant living his income from his labor and property at the expense of creditors who have trusted in his honor. But the Courts should be slow to force into receivership one who is doing the best he can to meet his honest obligations, who is dealing fairly with his creditors, and who is not throwing away his money and property in riotous living. Naturally, I like to see the members of our bar get fair fees for their services in representing receivers. Fees of this character, however, should not be paid at the expense of creditors and of the debtors when it may be fairly assumed that the debtor may attend to his own affairs better than they could be attended to by a receiver. And, generally, a man who is able to accumulate property can do more to preserve it than a receiver who has not the same personal interest as the owner. In the times through which our country is now going, there should be full, complete, and honest cooperation on the part of every debtor and his creditors, with the purpose in view of trying to help each and every one interested, with no one seeking to gain undue advantage over the other. * * * "

It is true that there, creditors were involved, and in the instant case, minority stockholders, but in fact a stockholder is a creditor, and the principle is the same.

In an endeavor to recoup losses from operations in prior years, the majority stockholders desire to continue the corporation. In the years 1933 and 1934, considerable progress towards this end was made, although in charging off old accounts as worthless, it would "appear on paper" that the respondent corporation was slowly but surely dying for the lack of sufficient nurture. The officers of the corporation have ceased to draw salaries, and thus minimize operating expenses; and there is not even a suggestion that the majority stockholders are not doing their utmost to rehabilitate the corporation and salvage the invest-

ment therein. Their interest lies with the interest of the minority stockholders. That which is to their interest and/or detriment applies equally to minority stockholders. The testimony shows that in one instance, an indebtedness considered a loss was paid when there was a good "crop year", and that in the trucking industry in the vicinity where respondent operates, this is not unusual. It is a matter of common knowledge that a going concern is in a much better position to collect indebtedness, even of long standing, than a concern in receivership; and considerable of the assets of respondent is represented by indebtedness to it. The history of receiverships should be a deterrent to rushing a corporation into a receivership.

The trial Judge is so located as to have a peculiar knowledge of the many factors entering into the question being decided, and for this reason we would be loath to hold that he had committed such an abuse of discretion as to amount to error of law. Aside from this, we cannot say from the cold record before us that there has been an abuse of discretion. In fact, we think his discretion, in all probability, was wisely exercised.

The decree or order appealed from is affirmed.

MR. CHIEF JUSTICE STABLER and MESSRS. JUSTICES BONHAM and FISHBURNE concur.

MR. JUSTICE CARTER did not participate on account of illness.