7600

STATE OF SOUTH CAROLINA v. LANGFORD.

1. A RELEASE from liability will be construed in equity according to the intention of the parties. Here the release by the State of a surety company on a county treasurer's bond by payment of the amount of the bond held to be a release upon conditions which the State must fulfil, and its suit against the county treasurer and the company for the joint benefit of the company and the State held to be one of

the conditions, which it is permitted to prosecute notwithstanding the release.

2. APPEAL.—Questions not passed on below not considered here.

Before GAGE, J., Hampton, February, 1910. Affirmed.

State of South Carolina against Jesse C. Langford and National Surety Company. From judgment for plaintiff, defendant Langford appeals.

*Mr. G. Duncan Bellinger,* for appellant, cites: *Bond unassignable:* 2 McM., 58; 1 Hill, 345; 3 Brev., 10; 18 Cyc., 783. *Payment by one joint obligor may be pleaded by the other:* 2 Bay., 475; 9 Am. Dec., 520; 21 Ga., 198. *Surety should sue in his own name:* 4 Wash., 446; 41 Md., 571; 48 S. C., 588. *But not on bond:* 2 Bay., 475; 9 Am. Dec., 520; 5 Barb., 398; 32 Cyc., 261; 40 Am. Dig., sec. 568.

*Attorney General Lyon* and *Mr. W. H. Townsend,* contra, cite: *Payment by surety did not settle State's claim:* 77 S. C., 414; 34 Pac., 649; 7 Rich. L., 401; 5 Dutch., 514; 3 McC., 528; 2 Bail., 15; 3 Rich. Eq., 139. *Agreement was to assign judgment:* 20 S. C., 139; 67 S. C., 114; 1 W. & T., Lead. Cas. Eq., 60; 31 S. E., 976; 14 L. R. A. (N. S.), 155. *State agreed to prosecute action:* 83 S. C., 535; 19 S. C., 210; 48 S. C., 598; 89 Fed., 182.

STATEMENT OF FACTS.

The facts are fully set out in the decree of his Honor, the Circuit Judge, which is as follows:

"The plaintiff sued the defendant, Langford, former treasurer of Hampton county, on his official bond, and joined the defendant, National Surety Company, as one of the makers and surety on the bond.

"The complaint alleges a breach of the condition of the bond, in that Langford failed to turn over to his successor

in office, about twenty-five thousand dollars of public moneys.

"The defendant, Langford, made a general denial. The other defendant plead defenses not now necessary to state.

"At the trial the defendant, Langford, was granted leave to make a supplemental answer, in which he plead:

"(1) That since this action was begun, the claim of the plaintiff had been discharged by payment.

"(2) That since this action was begun, the plaintiff had assigned its claim to the National Surety Co., thus defeating the plaintiff's further interest in the cause.

"After conference, counsel then agreed upon what had been done betwixt the State and the Surety Company, and counsel made and signed an agreed statement, upon which the case was to be tried.

"So the cause is now akin to a controversy without action.

"By the terms of the agreed statement, the original answers were withdrawn, and the only pleadings and proof now are the complaint, the supplemental answer of Langford and the agreed statement.

"From the agreed statement it appears, that on the 22d of October, 1909, the plaintiff and the Surety Company made an agreement, by which:

"(1) The Surety Company was to pay $20,000 in full settlement of all demands on it by reason of the bond.

"(2) The plaintiff was to press to judgment its claim against Langford and the Surety Company, the latter thenceforth a nominal party.

"(3) Any judgment recovered should be entered against Langford, or Langford and the Surety Company, at the Surety Company's request, and then satisfied or assigned to the Surety Company for common interest as further herein provided.

"(4) The Surety Company should be subrogated to and have assigned to it, all the rights of the plaintiff in the judgment, subject to the next stated provision.

"(5) Any judgment recovered against Langford should be collected by the Surety Company, with the State's assistance and co-operation, from Langford or any other parties liable therefor.

"(6) The money collected on the judgment should be applied (a) to costs, expenses and fees; (b) to the payment of the plaintiff all over $20,000 and up to $24,171.02; (c) to the Surety Company.

"Under this agreement the Surety Company paid the State twenty thousand dollars.

"The narrow issue is, have the agreement and payment thereunder, one or both, operated to conclude this action? That is Langford's contention. He admits that the Surety Company, having made good the default, may now sue him in an independent action, to recover back the money so paid, to the limit of $20,000, but no more. If Langford's contention be true, then the intention which the State and the Surety Company had will be defeated; for they intended, and so expressly declared, that this action should proceed to judgment. That intention ought to be executed, unless it be in contravention of law, or hurtful to the rights of Langford. It can make no substantial difference to Langford whether he answer this action, or whether he answer an action against him by the Surety Company; the issue in both is the same.

"The first contention of Langford in the supplemental answer is, that the claim of the State has been paid. But that is not so; the State had two claims, one against Langford as principal, and one against the Surety Company as surety; and the claims rest on different liabilities. It is possible, and it sometimes happens, that the liability of the principal is intact, while the liability of the surety is discharged. The principal might be liable for the whole

amount claimed, and the surety might be liable for only a part of it. The State claims $24,171.02. If Langford is due to it that much, then the acceptance by the State of $20,000 from the Surety Company, does not operate to pay $24,171.02. If Langford is due to the State the larger sum, and that is susceptible of proof, then the State has something in issue besides the sum it got from the surety, and the cause ought to proceed to the end, that is to judgement and execution. The $20,000 paid by the Surety Company was not accepted as payment of the whole liability of Langford, and there is no reason why it should operate as such.

"It is not worth while to consider if the Surety Company may have from Langford, in the event of recovery, anything over what it has paid, as under the sixth paragraph of the agreement, that is not in issue now.

"In my opinion, the claim of the state against Langford has not been paid.

"The next contention is that the plaintiff has assigned its claim, to wit: this cause of action to the Surety Company, and that defeats this action. There is nothing within the agreement about the assignment of the claim. There is in the minutes of the county commissioners a recital about the State and county, transferring all rights of action, which they may have against ———— and any other person or corporation that may have participate] in the loss. But when the agreement was reduced to its finality, it provided (2) that the State should press to judgment its claim; and (3) that the judgment shall be assigned to the Surety Company; and (4) that the Surety Company should be subrogated to the rights of the State in the judgment.

"As matter of fact and of law, therefore, I conclude that the State's claim was not assigned to the Surety Company, but that the only thing assigned was the judgment, when it shall have been recovered.

"I have given careful consideration to the able argument of counsel for Langford. I have not been able to examine all the authorities they cite. I have rather considered the case, not so much on authority, but upon principles of reason applied to its particular features.

"At the close of the agreed statement in this paragraph, to wit: 'The principal answers having been withdrawn, it is not necessary for plaintiff to offer proof in support of the allegations, as to the amount of the shortage,' the Court is requested to render judgment in accordance with the admitted facts.

"In conformity with this agreement, the plaintiff is entitled to judgment against the defendants for twenty-four thousand one hundred and seventy-one and 02-100 dollars; it is so ordered."

The receipt of the attorney general for the $20,000 is as follows: "Received from National Surety Co., exchange on New York for $20,000 which, when paid, will be in full settlement of all claims of the State against the National Surety Co. in the matters of Langford; in accordance with the agreement above set out; made by State in behalf of itself and the County of Hampton, under resolution of its county commissioners, October 22, 1909.

"J. FRASER LYON,<br>"Attorney General, S. C."

The defendant, Langford appealed from said decree.

OPINION.

July 4, 1910.    The opinion of the Court was delivered by

MR. JUSTICE GARY (after stating the facts).    The first question that will be considered is whether there was error on the part of his Honor, the Circuit Judge, in ruling that the defense interposed by the defendant, Langford, alleging that since this action was commenced, the claim of the plaintiff had been discharged by pay-

ment, could not be sustained. The contention of the appellant is predicated upon the theory that the agreement of the plaintiff to release the defendant, National Surety Company, was the sole consideration upon which the agreement was made. Not only did the Surety Company pay the $20,000, but it also agreed "that on the recovery of judgment against J. C. Langford, and its assignment to the Surety Company, said Surety Company shall, at its own expense, but with the assistance and full co-operation of the State and its associates, take such steps and file such proceedings as it may be advised might result in recovery of the whole or part of said judgment from the said Langford, or any other parties liable thereon, or by reason of any matters or transactions connected therewith."

It also agreed "that upon said recovery, if any, the moneys arising therefrom shall be disposed of as follows: (a) To the reasonable costs, expenses and professional compensation therein; (b) next, to the payment of the State of the excess over $20,000 of its recovery upon the judgment against J. C. Langford, and up to $24,171.02, the amount demanded in the suit pending on the bonds; (c) the balance to the National Surety Co.," thus showing that the plaintiff had a beneficial interest in the proceeds, arising from the enforcement of the judgment, and that under the assignment thereof, the Surety Company would become a trustee for the plaintiff to the extent of its interest. The agreement entered into between the plaintiff and the Surety Company was executory in its nature, and it clearly appears upon the face thereof, that it was not intended that the payment of the $20,000 should either discharge Langford or the Surety Company from further liability, unless it complied with the conditions of the contract as to the enforcement of the judgment for the benefit of the plaintiff. In the case of *Massey* v. *Brown,* 4 S. C., 85, the principle was announced, that although the general rule is that a release of one of several obligors discharges

the others, yet equity will restrain the general effect of the release, according to the intent of the parties, and that such intent may be shown, even by parol evidence. In that case the Court uses the following language:

"Equity construes a release according to the intention of the parties, and will give it no operation beyond the design or the purpose it was intended to accomplish. The principle is so fully enforced by Chancellor Kent, in *Kirby* v. *Taylor,* 6 John. Ch., 242, that any further reference to authority in support of the rule is unnecessary. It is certainly in strict consistency with the doctrine of equity, which always seeks, if possible, to give effect to the intent which induced the act, if it can be ascertained without a violation of the rules of law. We cannot, however, refrain, because they appear so pertinent to the case before us, from referring in the language of the chancellor, to some of the authorities on which he rested his opinion: Lord Hardwicke said, in the case of *Cole* v. *Gibson,* 1 Ves., 503, 'That it was common in equity to restrain a general release to what was under consideration at the time of giving it.' And again, in *Ramsden* v. *Hitton,* 2 Ves., 304, he observed, 'That if a release be given on a particular consideration recited, notwithstanding that the release concludes with general words, yet the law, in order to prevent such surprise, will construe it to relate to the particular matter recited, which was under the contemplation of the parties, and intended to be released.' "

The Court thus states the rule in *Brown* v. *Whittington,* 33 Oregon, 300: "It is insisted at the outset that the plaintiffs cannot recover, because the complaint admits that the note upon which judgment against Whittington and Shull was recovered by Brown, was paid in full by Shull before the commencement of the action thereon. But the contention is not supported either by the allegations or the proof. The complaint alleges, that prior to the commencement of the action, Shull gave Brown sufficient money to satisfy

the note, with the understanding and agreement that it should not be considered as payment, but that Brown should prosecute an action thereon in his own name, at the expense and for the use and benefit of Shull; and the testimony is to the same effect. This was no more than Shull could have compelled Brown to do. Mr. Brandt says: 'It is settled by a long-continued and unvarying current of authorities that the surety may, by a suit in chancery, after the debt becomes due, and before he pays it, compel the creditor to proceed to collect the debt from the principal, provided he indemnify the creditor against loss from a fruitless suit against the principal." 1 Brandt on Sur. (2 ed.), 528; *Carson* v. *Richardson,* 3 McC., 528; *Potts* v. *Richardson,* 2 Bail., 15; *Thomson* v. *Palmer,* 3 Rich. Eq., 139; *Wilson* v. *Wright,* 7 Rich. Eq., 399; *Kinard* v. *Baird,* 20 S. C., 377.

The second defense set up by Langford is as follows: "That the plaintiff, since the commencement of this action, has assigned its claim, to wit: The cause of action herein sued on, to the defendant, the National Surety Company, and hence the plaintiff has no further interest in the subject matter herein." Error is assigned on the part of the Circuit Judge in not sustaining this defense. The exceptions raising this question are overruled for the reasons stated by the Circuit Judge.

His Honor in his decree says: "It is not worth while to consider if the Surety Company may have from Langford, in the event of recovery, anything over what it has paid as under the sixth paragraph of the complaint, that is not in issue now." As the Circuit Judge has not passed upon this question, it is not properly before us for consideration.

It is the judgment of this Court that the judgment of the Circuit Court be affirmed.