## EX PARTE CITIZENS' EXCHANGE BANK OF DENMARK

### (139 S. E., 135)

1. Banks and Banking—Bank Examiner, if Bank is Insolvent, May Elect to Permit Liquidation by Directors or Apply for Receivership, but Ordinarily Cannot Withdraw Consent to Liquidation by Directors, Once Given (Civ. Code 1922, §§ 3981, 3985).—Bank examiner has right to elect, if bank is insolvent, to permit liquidation by directors, under Civ. Code 1922, § 3981, or to apply for a receivership, under Section 3985, and, having elected to proceed under the first section, ordinarily cannot thereafter withdraw his consent and proceed under the second.

2. Banks and Banking—After Bank Liquidation by Directors as Trustees Has Been Ordered, Examiner for Good Reasons May Request Removal of One or More Trustees and Substitution of Others, Whether Called Trustees, Receiver, or Other Appropriate Name (Civ. Code 1922, § 3981).—After liquidation of bank by directors acting as liquidating trustees, under Civ. Code 1922, § 3981, has been ordered by the Court, bank examiner may for good reasons appearing request Court to remove one, several, or all of the liquidating trustees and to have one or more persons substituted for such as may be removed, let the substitutes be called liquidating trustees, receiver, or any other appropriate name.

3. Corporations—Statutory Language "When any Corporation Shall be Dissolved," Refers to Time When Liquidation Was Legally Determined On Rather Than Time When Completed (Civ. Code 1922, § 4284).—The language, "when any corporation shall be dissolved in any manner whatever," found in Civ. Code 1922, § 4284, refers to the time after it has been legally determined to liquidate and wind up affairs of corporation and does not mean after dissolution has been completed.

4. Banks and Banking—In Action for Liquidation of Bank by Directors, Depositor, Creditor, or Stockholder May Apply to Court for Appointment of Receiver (Civ. Code 1922, §§ 3981. 4284).—In action to liquidate bank, under Civ. Code 1922, § 3981, any depositor, creditor, or stockholder considering his interest improperly protected by directors and examiners, or either of them, has right, under Section 4284, to apply to Court for appointment of receiver whether bank is solvent or insolvent, and regardless of consent or nonconsent of directors or examiner.

5. Banks and Banking—In Proceeding to Liquidate Bank by Directors, Judge on Application for Appointment of Receiver Must Act Under Laws as to Receivers, Including Particular Section

(CIV. CODE 1922, §§ 3981, 4284; CODE CIV. PROC. 1922, § 524).—In proceeding under Civ. Code 1922, § 3981, for liquidation of bank by directors as liquidating trustees, Judge on application, under Section 4284, for appointment of receiver must act "under the laws of the State as to receivers"; such laws being contained in Code Civ. Proc. 1922, § 524, and decisions of Supreme Court.

6. BANKS AND BANKING—APPOINTMENT OF RECEIVER HELD WARRANTED IN PROCEEDING TO LIQUIDATE BANK BY DIRECTORS (CIV. CODE 1922, §§ 3981, 4284).—In proceeding for liquidation of bank by directors as liquidating trustees, under Civ. Code 1922, § 3981, appointment of receiver on application, under Section 4284, *held* warranted by showing made to Court.

7. RECEIVERS—COURT OF EQUITY MAY APPOINT RECEIVER, BUT POWER SHOULD BE EXERCISED WITH CAUTION.—Court of Equity has power to appoint receivers, but such power should be exercised with caution.

8. RECEIVERS—MATTER OF ORDERING RECEIVERSHIP IS LARGELY WITHIN DISCRETION OF CIRCUIT JUDGE.—The matter of ordering a receivership is very much within the discretion of the Circuit Judge.

9. RECEIVERS—CIRCUIT JUDGE HAS LARGE DISCRETION IN SELECTION OF RECEIVER.—The power of Circuit Judge to designate or select a receiver is a matter of discretion probably greater than that of deciding in the first instance whether or not there should be a receivership.

10. BANKS AND BANKING—ON BANK EXAMINER'S APPLICATION FOR RECEIVER, COURT NEED NOT NAME EXAMINER'S APPOINTEE OR EXAMINER HIMSELF.—On application of bank examiner for appointment of receiver for an unsound bank, Court is not required to appoint examiner's nominee or the examiner himself.

11. CORPORATIONS—PERSONS CONNECTED WITH A CORPORATION MAY, BUT SHOULD NOT GENERALLY, BE APPOINTED RECEIVER THEREOF.—Persons connected with a corporation may, but should not, be appointed receivers of the corporation; such practice being disapproved unless the case is exceptional and urgent and parties interested consent thereto.

12. APPEAL AND ERROR—SUPREME COURT, HOLDING APPOINTMENT OF PARTICULAR RECEIVER WAS ABUSE OF DISCRETION, CANNOT DESIGNATE ANY RECEIVER, BUT CAN ONLY DIRECT CIRCUIT JUDGE TO FILL VACANCY.—Supreme Court, holding that appointment of particular person as receiver for bank was an abuse of discretion by Circuit Judge, cannot go to the extent of requiring Circuit Judge to appoint another particular person, but can only direct Judge to fill the vacancy.

13. Banks and Banking—Appointment of Bank Examiner's Attorney as Receiver for Bank Held Not Abuse of Discretion (Civ. Code 1922, §§ 3981, 4284.—In proceeding under Civ. Code 1922, § 3981, to liquidate bank by directors acting as liquidating trustees, wherein appointment of receiver was sought under Section 4284, *held,* appointment of attorney for bank examiner as receiver was not abuse of discretion, he not being an applicant for the position or the nominee of examiner or other interested person.

14. Receivers—Ordinarily, Attorney of Party Actively Engaged in Securing or Opposing Receivership Should Not be Named Receiver.—Unless all interested parties consent thereto, the attorney of a party actively engaged in securing a receivership or in opposing it should not be named as receiver in a cause.

15. Receivers—Receiver Should be Honest and Capable and Selected With Due Consideration of His Impartiality and Business Ability With Respect to Things to Come Under His Management.—A receiver should be honest and capable and selected with due consideration not only of his quality of indifference, but also his business ability with respect to character of property to come under his care and duties which he will be required to perform.

Before Mann, J., Bamberg, February, 1927.   Affirmed.

On *ex parte* petition the Citizens' Exchange Bank of Denmark was authorized to liquidate under the supervision and control of the State Bank Examiner. Thereafter W. W. Bradley, Examiner, applied for order appointing T. P. McCrae as receiver, and J. M. Kinard, on behalf of himself and all other depositors, applied for appointment of F. V. James as receiver. From an order of the Circuit Judge declining to appoint either nominee as receiver and appointing J. E. Harley, Kinard, the depositors associated with him, and the directors appeal.

See, also, 138 S. C., 426.

*Mr. J. Wesley Crum,* for appellant depositors, cites: *An attorney for one of the parties to the suit should not be appointed receiver:* 1 Pom. Eq. Jur. (2nd Ed.), Sec. 150; Alderson on Rec., 63, Sec. 40; Tardy's Smith on Rec. (2nd Ed.), 278, Sec. 64; 32 Ill., 79; 16 Atl., 157; 72 Fed., 575; 5 N. W., 627; 9 Ir. Eq., 324. *Receiver should be impartial:*

84 S. C., 214; 11 Ir. Eq., 484; Tardy's Smith on Rec. (2nd Ed.), 270, Sec. 62. *Eligibility of relatives of the parties:* Alderson on Rec., 62, Sec. 37; 96 S. C., 411. *Error to remove directors as liquidating trustees without cause:* 133 S. C., 446; 138 S. C., 425; 27 S. C., 417. *When Court should appoint receiver:* 4 Pom. Eq. Jur. (3rd Ed.), 2654–2661, Secs. 1332–1335. *Liquidating trustee in same position as receiver:* 15 S. C., 304; *Id.*, 518; Alderson on Rec., 883, Sec. 645.

*Mr. Thos. M. Boulware,* for appellant directors, cites: *Under Court orders to liquidate its own affairs, directors become liquidating trustees:* 133 S. C., 446; 136 S. E., 888; Secs. 3981, 4282, Code. *Error to remove trustees without just cause:* 27 S. C., 408; Pom. Eq. Rem., Secs. 116, 117. *Appointment of receivers:* 4 Pom. Eq. Jur. (3rd Ed.), Secs. 1332, 1334. *Duties of trustee:* 3 Hill, 204; 34 Cyc., 257. *Unless made by pleadings, issues not considered on appeal:* Sec. 528, Code Civ. Proc.; 82 S. C., 97; 45 S. C., 381; 94 S. C., 125; 114 S. C., 332; 109 S. C., 409. *Exception:* 5 Rich., 405; 1 McC. Eq., 318.

*Messrs. J. E. Steadman* and *Solomon Blatt,* for respondent, cite: *Appointment of receiver within discretion of Circuit Judge; not disturbed unless manifest abuse of discretion:* 96 S. C., 411. *Agent of a pressing creditor should not be appointed receiver of an insolvent corporation:* 82 S. C., 214. *Points not raised in lower Court not considered on appeal:* 40 S. C., 533; 86 S. C., 217; 124 S. C., 415. *Proceeding commenced under Sec. 3981, Code and abandoned, does not preclude proceeding under Sec. 3985, Code:* 136 S. E., 888. *Exception which does not contain complete assignment of error, not considered on appeal:* 114 S. C., 323. *Not error for Circuit Judge to hold that an appeal from his order would not stay proceedings:* Sec. 651, Code Civ. Proc.

July 13, 1927.

The opinion of the Court was delivered by Mr. Justice Blease.

On May 11, 1925, the board of directors of the Citizens' Exchange Bank of Denmark requested the state bank examiner to take charge of the property and business of that banking institution for not exceeding 30 days, pursuant to the provisions of Section 3981 of the Code of 1922, Vol. 3, On May 23, 1925, the stockholders of the bank, after reciting that on account of the circulation of false rumors as to the solvency of the bank, the deposits thereof had been withdrawn until the cash reserve was below the regular requirements, and that an inspection of the affairs of the bank by the state bank examiner had shown that the bank was solvent, adopted resolutions approving the action of the directors in calling in the examiner and indorsed a petition that an order should be obtained from the Court of Common Pleas, authorizing the bank to liquidate its affairs under the sole supervision and control of the examiner, and subject to the order of the Court. On the same day the directors of the bank passed a resolution, with the state bank examiner consenting, that proceedings be instituted for a Court order, authorizing the bank to liquidate its affairs under the sole supervision and control of the examiner, subject to the order of the Court. On June 9, 1925, on motion of J. Wesley Crum, Esq., attorney for the bank, in proper proceeding, with the written consent of the then state bank examiner, W. W. Bradley, his Honor H. F. Rice, judge of the Second Circuit, at chambers, passed an order that the bank proceed to liquidate its affairs under the direction of the examiner, subject to the order of the Court of Common Pleas; therein, F. V. James, former president, cashier, and director, was appointed liquidating agent for the bank; and it was also provided therein that, during the period when the examiner should be in control of the corporation, no action or proceed-

ing against the corporation or its stockholders should be instituted, except in the cause wherein the order of liquidation was granted. The title of the action in which this order was obtained was:

"Ex parte ·the Citizens' Exchange Bank of Denmark, South Carolina. In re the Liquidation of the Affairs of the Citizens' Exchange Bank."

No one of the creditors, depositors, or stockholders of the bank was made a party to this suit. After this order was made, Mr. James, with the consent of the other directors and the examiner, under the order of Judge Rice, was in charge of the liquidation of the bank, and he is now so engaged.

On January 24, 1927, Albert S. Fant, successor of W. W. Bradley in the office of state bank examiner, through his attorneys, the Attorney General and Assistant Attorney General and J. E. Steadman, Esq., and Messrs. Harley & Blatt, gave notice to the Citizens' Exchange Bank of Denmark and the officers and directors thereof that he would apply to his Honor J. Henry Johnson, Circuit Judge, then presiding in the Second Circuit, at his Chambers, on January 31, 1927, for an order appointing T. P. McCrae as receiver of the bank in the place and stead of the state bank examiner. With the notice there was filed a petition on the part of Examiner Fant, in which it was stated that the proceeding instituted was brought under the provision of Section 3985, Vol. 3, Code of 1922. Examiner Fant, then but recently in office, was of the impression that, as the successor of Mr. Bradley, he had become receiver, but in this he was in error since no receiver had been appointed. This proceeding was entitled:

"*The State of South Carolina ex rel. W. W. Bradley, State Bank Examiner, Petitioner, v. the Citizens' Exchange Bank, at Denmark, S. C., and F. V. James, President and Cashier, and Director, and St. C. P. Guess, J. A. Hartzog,*

*H. C. Rice, S. S. Ray, H. B. Grimes, and C. W. Garris,
Directors, Defendants."*

On January 24, 1927, J. M. Kinard, on behalf of himself and all other depositors of the Citizens' Exchange Bank, through his attorney, J. W. Crum, Esq., presented to Judge Johnson his application for the appointment of F. V. James, the president and cashier of the bank, as receiver of the institution. Numerous depositors and the directors joined in asking the appointment of Mr. James. The title of this action was:

*"J. M. Kinard, on behalf of himself and all other depositors of the Citizens' Exchange Bank of Denmark, S. C., Petitioner, against the Citizens' Exchange Bank of Denmark, S. C., F. V. James, Liquidating Agent of the Citizens' Exchange Bank of Denmark, S. C., and S. S. Ray, H. C. Rice, F. V. James, St. C. P. Guess, C. W. Garris, J. H. Hartzog and H. B. Grimes, Directors, Defendants."*

The verified petition of Kinard contained allegations that it then appeared that the bank was insolvent, and that it was to the interest of the depositors, stockholders and creditors and all persons interested in the bank that a receiver be forthwith appointed by the Court. Judge Johnson issued a rule against McCrae, requiring him to show cause why James should not be appointed receiver. To this rule, both McCrae and State Bank Examiner Fant made returns, which conceded the insolvency of the bank and requested the appointment of McCrae as receiver.

Later Judge Johnson learned that some of the persons interested in the affairs of the involved bank were related to him, accordingly, he ordered all the pending matters transferred to Hon. M. M. Mann, Circuit Judge, for hearing. All the petitions and returns were heard by Judge Mann as being in the proceeding first instituted—that of *"In re the Liquidation of the Affairs of the Citizens' Exchange Bank."* At the hearing many affidavits were submitted, and some oral testimony was taken. Judge Mann declined to appoint

either Mr. James or Mr. McCrae as receiver, and on his own motion, without suggestion from the state bank examiner, or any interested party, and without solicitation on his part, named J. Emile Harley, Esq., of Barnwell, as receiver.

From the order of the Circuit Judge, Kinard, the depositors associated with him, and the directors have appealed.

The appellants have twelve exceptions. In their arguments, they have reduced the questions involved to eight. These may be further reduced to three. Accordingly, without passing upon the exceptions seriatim, or even finding it necessary to state them, we enter upon the consideration of the issues, which, in our opinion, affect the determination of the appeal.

First. Should a receiver have been appointed at all?

Included in the findings of Judge Mann, set forth in his order, were those stated in his own language, as follows:

"Among other things, Kinard sets out in his petition that it now appears that the Citizens' Exchange Bank is insolvent, and it is to the best interest of all parties connected to have a receiver appointed. The state bank examiner sets out in his petition that the Citizens' Exchange Bank is now an insolvent corporation. So there is no question as to the insolvency of the bank and the necessity for the appointment of a receiver. In its final analysis, the only question before me to be determined is who should be appointed receiver of the bank."

Those holdings of the Circuit Judge are supported by the record. The main thing asked in the petition of the examiner was the appointment of McCrae as receiver. Kinard asked for the appointment of James to the position. Indeed, it seems there was a hot race between the supporters of these two gentlemen to secure the receivership for their respective candidates. Both of them were shown by their respective backers to be men of high character and well fitted for the trust sought. The supporters of each attacked the qualifications of the other for lack of business

ability and because of their former connections with the bank, but there was no reflection upon the personal integrity of either of the gentlemen.

The respondent takes the position that since the appellants conceded below that the Court should appoint a receiver, and made a losing fight for the appointment of Mr. James, they are precluded here from raising the question they now make. This position is sustained by many authorities, including *Robinson v. Mills,* 124 S. C., 415; 117 S. E., 424, *State v. Langford,* 86 S. C., 217; 68 S. E., 533, and *Davis v. Elmore,* 40 S. C., 533; 19 S. E., 204, cited by respondent. Because of a question of some interest, however, raised by the appellants in this connection, and with the purpose of endeavoring to clear up some apparent confusion among the bar as to the procedure in relation to the liquidation of insolvent banks, we do not rest the disposition of the matter under investigation on the ground that the appellants have lost their right to protest against a receivership.

The appellants contend that after the liquidation of the bank was directed to be made by the order of Judge Rice, in the proceeding first instituted, as provided in Section 3981, Vol. 3, Code of 1922, the directors of the bank thereupon became liquidating trustees, the equivalent of statutory receivers; and that they could not be displaced by a receiver, without it appearing to the Court's satisfaction, after proper hearing, that they had been guilty of some misconduct, or at least negligent in the performance of their duties. It should be noted that no imputation of the natures mentioned was made against any of the directorate except Mr. James. As to him, the only charge was that he and some of his near relatives were indebted to the bank, and that he had not pressed speedily the collection of these debts. In justice to Mr. James, it should be stated that in many instances his seeming delay was perhaps best, for thereby he succeeded in gathering many dollars which may not have been recovered if hurried and drastic measures had been taken.

The appellants argue that the Circuit Judge could not remove the directors, as liquidating trustees, and appoint in their stead a receiver, under the circumstances in this cause, and in support of this position they rely mainly upon three decisions of this Court, those in the cases of *Pelzer, Rodgers & Co. v. Hughes,* 27 S. C., 408; 3 S. E., 781, *Browne v. Hammett,* 133 S. C., 446; 131 S. E., 612, *Ford v. Sauls,* 138 S. C., 426; 136 S. E., 888, and the order of Mr. Justice Cothran in *Ex parte* Brown, reported along with the opinion in *Ford v. Sauls.*

In the *Pelzer case,* it was held by this Court that a Circuit Judge committed error in appointing a receiver to displace the assignee of an insolvent merchant, who had made an assignment under the Assignment Act, for the benefit of his creditors. That case was decided in 1887, and the decision was based upon the provisions of the Code then of force, and the general rules of equity relating to the appointment of receivers. We do not regard that decision as being in point here for at least two reasons now occurring to us: First, it was sought there to appoint a receiver for an insolvent individual, while here the proposed receivership is for an insolvent banking corporation; and, second, the statutes relating to the office of state bank examiner and the duties of that official as to insolvent banks and the liquidation of banking institutions did not enter into the determination made; indeed, that legislation had not been enacted at that time.

The case of *Browne v. Hammett, supra,* does bear out some of the contentions of the appellants. The main point for decision in that case was the right of creditors of an insolvent bank, in course of liquidation, under Section 3981, to maintain an action against the directors, as liquidating trustees of the insolvent bank, for negligence and mismanagement alleged to have been committed in their capacities as such trustees. This Court held that such action could be maintained without the consent of the bank examiner. Some

of the holdings there made, in an able opinion of Mr. Justice Cothran, as to the effect of the provisions of Sections 3981 and 3985, and the distinguishing features between these two Sections, were as follows:

(1) That under Section 3981, as applied to Sections 4282 and 4283 of Volume 3 of the Code, the directors of the bank "became, *ipso facto,* liquidating trustees of the banking corporation, with all the rights, powers, and duties conferred by Section 4282."

(2) That in the liquidation of a bank provided for in Section 3981, the state bank examiner was "simply a supervisor and director of the process of liquidation."

(3) "The appointment of the directors as liquidating agents of the examiner was entirely unnecessary, as the directors in a liquidation by the corporation were already charged with that duty."

In *Ford v. Sauls,* where the main question for decision was as to the right of depositors of an insolvent bank to bring an independent action for their special benefit against the stockholders, on account of the statutory liability of stockholders to depositors, certain language was used in the opinion of the Court, written also by Mr. Justice Cothran, which the appellants consider as being favorable to their views. That language was as follows:

"* * * On the contrary, Section 3981 applies without distinction to insolvent as well as solvent banks, and if the bank be found to be insolvent, the discretion is vested with the examiner to proceed under either Section 3981, by liquidation, or under Section 3985, by receivership."

We gather from appellants' argument that their main reliance is in certain expressions of Mr. Justice Cothran in *Ex parte* Brown, on an application for an order of supersedeas heard by him alone. Although the order in that cause was not an utterance of this Court in a cause heard by this Court, it had the sanction of the justices who participated in the hearing of *Ford v. Sauls,* and was directed to be re-

ported with the opinion in the last-mentioned case. The appellants point to this statement made by Mr. Justice Cothran:

"While, as pointed out in the case of *Browne v. Hammett,* 133 S. C., 446; 131 S. E., 612, *Sections 3981 and 3985 provide for 'two distinct statutory proceedings' and if either is pursued to a finality the exclusion of the other is complete,* there appears no reason why, if the proceeding instituted under Section 3981 should be abandoned, the examiner is precluded from proceeding under 3985. Section 3981 provides that neither the resumption of business nor the liquidation of the corporation can be accomplished without the consent of the examiner; if the proceeding under Section 3985 should be annulled, the respondents would be completely balked under Section 3981 by the examiner's withholding his consent. The fact that he is proceeding under Section 3985 is conclusive evidence that such consent would be withheld."

We have italicized the particular language on which the appellants lay great stress; and it must be conceded that they very much justify the statement made in the argument of their counsel, as follows:

"In the case at bar Mr. Bradley, as state bank examiner, consented, within the statutory 30 days, to an order for liquidation under Section 3981. Thereby one of the two statutory proceedings was pursued to a finality and the exclusion of further proceedings under Section 3985 became complete. Further, Mr. Bradley, as state bank examiner, with Mr. Fant, his assistant, who examined this bank at the closing, decided under Section 3981 that the affairs of the defunct bank could best be administered under the liquidating trustees and under Section 3981. After consenting to the order for liquidation, neither Mr. Bradley nor Mr. Fant, his successor, have the power to withdraw such consent and to proceed under Section 3985. Certainly not without show-

ing facts sufficient to constitute cause for removal of the liquidating trustees."

It is clear that Section 3981 relates to the duty of the examiner in the matter of the liquidation of a bank, solvent or insolvent, at the request of the corporation, under an order of the Court of Common Pleas. Such order may not be obtained without the examiner's consent. On the other hand, the examiner cannot obtain the order without the consent of the corporation seeking liquidation. Stockholders, depositors, and creditors cannot procure an order under that Section, and they are not necessary parties to a proceeding therefor.

Section 3985 relates especially to the duties of the examiner, not as to honest solvent banks, but to banks which are insolvent or banks dishonestly conducted. The examiner, in such instances, without the consent of any one connected with or interested in the banking corporation, after a consultation with the state treasurer, is given the power to procure a Court order directing him to take charge of the assets and property of the institution, and he is required, as a matter of duty, to make application for a receivership.

We agree, therefore, under the authority of the order in *Ex parte* Brown, with what we understand is one of the contentions of the appellants, that the examiner had the right to elect in the first instance, if the bank was insolvent, to permit liquidation by the directors, as provided under Section 3981, or to apply for a receivership under Section 3985; and our opinion is, that having elected to proceed under the first action, ordinarily, he could not thereafter withdraw his consent and proceed under Section 3985, and we think the reasons for permitting the examiner to choose between the two proceedings are well stated by Mr. Justice Cothran in *Ford v. Sauls,* when he said:

"It is conceivable that the conduct of the directors may have been such that actions against them would be advisable, in which event it would clearly be inexpedient to commit the

liquidation to them; or for many possible reasons the examiner might determine that a receivership under a capable, disinterested receiver would be preferable. At the same time, where there has been no suspicion of wrong-doing or negligence and the directors familiar with local conditions have the confidence of the examiner, liquidation by them would be preferable."

We do not wish it understood, however, that we hold that after liquidation has been ordered by the Court, under Section 3981, Vol. 3, the examiner may not, for good reasons appearing to him, request the Court to remove one, several, or all of the liquidating trustees, and to have one or more persons substituted for such as may be removed, let the substitutes be called liquidating trustees, receiver, or by any other appropriate name. The liquidation provided for in that Section, as has been heretofore stated, is under "the sole supervision and control of the examiner," and should he ascertain that any trustee is dishonest or negligent in the discharge of his duties, we regard it as the duty of the examiner to report the same to the Court with proper application for removal; and the Court in the original action is possessed of sufficient power for proper cause to grant the request. A holding to the contrary would not only be an incorrect statement of the law as we understand it to be, but would be disastrously injurious to the rights of depositors, stockholders, and creditors of banking institutions, in course of lawful liquidation by directors, who might be guilty of fraud or willful negligence in the conduct of the affairs of the corporation. And, too, a determination to that effect would be in utter conflict with the very purpose of the creation of the office of the state bank examiner by the General Assembly. The Statute (Section 4282, Vol. 3), as stated by Mr. Justice Cothran in *Browne v. Hammett,* makes the directors, in liquidation, trustees of the corporation and all its assets. As such trustees, they are subject to the order of the Court, responsible for breaches of the

trusts imposed upon them, and liable to the penalties for breaches which may occur, among which is that of removal from office.

We are unable, however, to go to the full extent of sustaining all that appellants ask. As shown, Sections 3981 and Section 3985 relate to the duties and powers of the state bank examiner under various circumstances. These two sections, however, do not contain all the enactments in our law which look to the protection of depositors, creditors, and stockholders of banking corporation. In fact, neither of them contains any reference to procedure on the part of any member of those classes of persons for relief, however much he may be entitled thereto. Some of the provisions of our laws for the benefit of depositors, stockholders and creditors are found in Sections 4282 and 4283, and have been construed in *Browne v. Hammett*. There it was held that these sections must be applied in connection with Section 3981. Section 524, Vol. 1, and Section 4284, Vol. 3, Code of 1922, have also important bearing in determining the correct answer to the question under consideration, and they must be applied likewise not only to Section 3981, but to 3985.

Section 524, Vol. 1, contains certain provisions as follows:

"A receiver may be appointed by a Judge of the Circuit Court, either in or out of Court: * * *"

"4. When a corporation has been dissolved, or is insolvent, or in imminent danger of insolvency, or has forfeited its corporate rights. * * *"

In Section 4284, Vol. 3, is the following enactment:

"When any corporation shall be dissolved in any manner whatever, any Circuit Judge of this State, acting under the laws of this State as to receivers, on application of any creditor or stockholder, at any time, may either continue the directors as trustees as aforesaid or appoint one or more persons to be receivers of such corporation. * * *"

The words, "upon the dissolution in any manner of any corporation," referred to in Section 4282, Vol. 3, were explained by Mr. Justice Cothran in *Browne v. Hammett,* as follows:

"Inasmuch as there can be no dissolution of the corporation 'until the affairs of the corporation have been liquidated' (*Henry v. R. Co.,* 104 S. C., 478; 89 S. E., 480), and as the powers thus vested in the directors contemplate the liquidation of the affairs of the corporation, it is manifest that the expression in the Statute 'upon the dissolution' of a corporation does not mean after the dissolution may have been completed, but should be construed as if it had read 'upon compliance with the provisions of Section 4280'; that is, after it had been legally determined to liquidate and wind up the affairs and dissolve." (Note.—What Mr. Justice Cothran said in the quotation made is evidently incorrectly printed in the S. C. Reporter. We take our quotation from the Southeastern Reporter.)

Following the definition and construction given, as quoted above, it must be apparent that the language used in 4284, "When any corporation shall be dissolved in any manner whatever," refers to the time "after it had been legally determined to liquidate and wind up the affairs and dissolve." . Therefore the liquidating proceeding order of Judge Rice herein, under Section 3981, was a legal determination providing for the dissolution of the corporation.

Although the examiner, in his official capacity, is limited to the procedures as provided in Section 3981 and Section 3985, depositors, creditors, and stockholders are not limited by the provisions of those two sections; really, as before indicated, they cannot find relief thereunder. Persons of these classes, or either of them, seeking desired relief, must look to the other Sections to which attention has been called. In

Note: The words "the directors contemplate the liquidation of" in the 4th and 5th lines of the quotation were omitted in 133 S. C., 454.—*Reporter.*

this cause, members of the depositors' class are interested as parties, and they come as appellants.

Under Section 524, Vol. 1, depositors, stockholders, and creditors could not have succeeded in procuring a receivership for the bank here involved at the time of Judge Rice's order, on the ground of insolvency, for the proof, as shown by the examination of the state bank examiner and the resolutions of the directors and stockholders of the institution, showed the solvent condition of the bank. Likely, on the ground of "imminent danger of insolvency," such receivership may have been obtained. But under the circumstances, with the assurance of the examiner, the directors, and stockholders that the bank was entirely solvent, the depositors and creditors must be held free of any criticism for failure to assert their rights at that time.

Again, the depositors and other creditors had the legal right to look to the examiner and to the directors, and to our laws, as laid down in Section 4284, Vol. 3, for the protection of their interests. They were not parties to the original proceeding brought under Section 3981. The order there made could have been procured—and likely was—without their consent or even knowledge. If any depositor, or other creditor, or stockholder considered his interest improperly protected by the directors and the examiner, or either of them, he had the right to apply to the Court in the original action, under the provisions of Section 4284, whether the bank was solvent or insolvent, for the appointment of a receiver. His right to take such steps was not limited to the desire of the examiner, nor to that of the directors; he did not have to wait for the consent of either of them; he did not have to delay until the examiner took action for his protection.

Exercising the rights given them, the appellants, Kinard and those associated with him as depositors, when the bank was being liquidated and in course of dissolution by the directors, as liquidating trustees, under the supervision of the examiner, and under the order of the Court of Common

32—S. C. 140

Pleas, applied to that Court in the original action for a receivership. Notice of the application was given to all the directors of the bank, who are also appellants here. Kinard alleged that he had on deposit in the bank, when it closed, $332.13, and the bank and its liquidating agent had refused to pay this sum, or any part thereof; that the liquidation had continued from June 9, 1925, to the date of his application, January 24, 1927; that the bank appeared to be insolvent; and "it is to the interest of the depositors, stockholders, and other creditors of said bank, and all persons interested whatsoever, that a receiver be forthwith appointed by the Court to take charge of said bank, to call in all creditors, and to wind up and settle its affairs pursuant to law." In this application, the appointment of Mr. James as receiver was requested. With this application on the part of Kinard, there was filed a written request of 132 depositors, whose aggregate deposits amounted to $91,500 out of total deposits in the sum of $178,246.64, urging the appointment of Mr. James as receiver. In their returns Mr. McCrae and the state bank examiner made affidavit as to large indebtedness on the part of Mr. James and the other directors to the bank, and they also showed that several of Mr. James' near relatives by marriage were largely indebted to the institution. These returns conceded the insolvency of the bank and the propriety of a receivership. The directors filed affidavits by way of return, which strongly defended the administration of Mr. James as liquidating agent. While protesting against the suggestion of the examiner that Mr. McCrae should be named as receiver, they did not in their returns take the position that some receiver should not be appointed.

We have not been cited by any of the interested parties, nor have we found in our own investigation, any decision of this Court as to the construction to be given to any of the language contained in 4284, except as to the meaning of a few words at the beginning of the Section, already discussed. We think it is plain, however, that a Circuit Judge, on application for the appointment of

a receiver thereunder, must act "under the laws of the State as to receivers"; and the "laws" referred to are, without doubt, contained in Section 524, Vol. 1 of the Code, and the decisions of this Court construing those "laws."

Having reached the conclusion that, while the petition of the examiner was insufficient to warrant a receivership (it not having been alleged therein that there was any negligence or wrongful conduct on the part of any of the directors), but holding that Kinard and his associate depositors had the privilege of asking the appointment of a receiver, we direct our attention to another important phase of this matter. Did the Circuit Judge commit error, as charged by the appellants, in deciding that a receiver should be appointed, in view of the showing made before him? It is not necessary to restate the facts already referred to. A very brief summary of the situation favorable to the respondent, as it appeared to the Circuit Judge, is all that is necessary, and is this: The bank was insolvent; the liquidating trustees had been in charge about 19 months without final action; suit against the stockholders on account of their statutory liability to depositors had been instituted (see *Ford v. Sauls* for this information) ; no dividend on the amounts due depositors had been paid; they desired a receiver and asked his appointment; the state bank examiner, charged with the supervision of the liquidation, wished to be relieved of his responsibility; on loans of around $385,-000 only $105,000 had been collected, and the collections made were said to be from the "choicest collaterals"; including their liability as stockholders of three directors, all the directors were indebted to the bank in sums ranging from $600 to over $18,000; nine near relatives of the liquidating agent owed the bank money in amounts from around $3,-000 to over $11,000, the total of these obligations amounting to over $59,000; many relatives of the directors had failed to pay debts due by them; the directors were not under bond; the liquidating agent had assumed the duties of active cashier

in a new bank, the only one in the town; it is urged that a conflict of interest between patrons of the new bank, who were indebted to the involved bank, might arise and embarrass the liquidating agent. (Note: It is due the directors, especially Mr. James, that it be said that the Court is informed that many of the obligations of his relatives have been paid since the hearing before Judge Mann.)

Let the facts as shown above, with the other facts before stated, be applied to "the laws of this State as to receivers," as required by Section 4284, with the purpose of seeing if there was error on the part of the Circuit Judge in refusing to "continue the directors as trustees" and in his decision to appoint a receiver.

In reply to the suggestion of the appellants that the order of Judge Mann did not accord with law, on the ground that it was a revocation of the order of Judge Rice, and that the former had no authority to interfere with the order of the latter, we call attention to what we have already said in regard to the rights of depositors, creditors, and stockholders to proceed under Section 524, Vol. 1, and Section 4284, Vol. 3, and to the case of *Dauntless Mfg. Co. v. Davis*, 22 S. C., 584, to show that the position taken is untenable. Besides, the order of Judge Rice permitted action or proceedings against the corporation or its stockholders to be instituted in the cause wherein the order of liquidation was obtained.

It will be observed upon a careful reading of Section 524, Vol. 1, that " a Judge of the Circuit Court" is not required, directed, or commanded in the instances set forth in that Section, to appoint a receiver. It is only provided therein that he *may* so appoint.

In Section 4284, Vol. 3, there is no direction that a receiver *must* be appointed, even in the circumstances there named. The wording there is that the Judge "may * * * appoint one or more persons to be receivers," if he does not think it wise "to continue the directors as trustees."

While the power of the Court of equity to appoint receivers in numerous instances has been upheld by this Court, it has also been repeatedly decided that this great power should be exercised with caution. *Miller v. Southern Land Co.,* 53 S. C., 364; 31 S. E., 281; *Virginia-Carolina Co. v. Hunter,* 84 S. C., 214; 66 S. E., 177; *Chisolm v. Carolina Agency Co.,* 88 S. C., 438; 70 S. E., 1035.

At the same time, the holdings of this Court, so far as we are advised, have been entirely consistent to the effect, and, from the statutes cited, properly so, that the matter of ordering a receivership is very much within the discretion of the Circuit Judge. *Chisolm v. Carolina Agency Co.,* 88 S. C., 438; 70 S. E., 1035; *Jackson v. S. C. Colored State Fair Ass'n,* 109 S. C., 283; 96 S. E., 116; *Thompson v. Thompson,* 120 S. C., 230; 112 S. E., 925. In rare instances only do our reports show that the decisions of the Judges in such matters have been reversed.

The turning point here, then, is whether or not the Circuit Judge, on the related facts which were before him, committed such an abuse of the discretion placed in him by the law as would justify this Court in reversing his decision. It should be manifest that, in seeking to determine a question of this nature, the peculiar facts and circumstances of each case must, after all, be the controlling guide. For the purpose of procuring information which might be helpful in ascertaining if a receiver should have been appointed in the case at bar, we have examined with some care every case in our reports, which we have been able to find, touching the appointment of receivers. While there are a number of decisions in which the propriety of receiverships for individuals, partnerships, and many classes of corporations has been passed upon, we have not found a single case in which the question of the correctness of an appointment of a receiver for a banking institution has been decided or even raised—and that in face of the fact, of which this Court

can well take judicial notice, that for many years, and, unfortunately, oftentimes during the last few years, many banks have failed, and in numerous instances receivers have been placed in charge. We think it may therefore be fairly inferred that it has been the general policy in cases of insolvent banks to appoint receivers, due perhaps to the unfortunate habit of many officers and directors, who might be intrusted with the liquidation, to borrow from the institutions under their care, and thereby place themselves in positions of embarrassment, however honest they may be, when it comes to a settlement of the affairs of the bank.

We do not hesitate to say, when the directors of banking institutions desire to be continued as such directors and liquidating trustees, that the proper thing, altogether, for them to do is to first settle with the bank their own obligations and liabilities, so that others who are indebted to the institution may have this excellent example to follow. Undoubtedly, as long as it is known in a community that the directors of the closed bank are not paying their own indebtedness to the bank, other debtors, and especially those who may be stockholders and depositors, will feel inclined to delay in paying what they owe.

The learned Circuit Judge not only had before him the admitted facts and those in dispute, which have come to this Court in the record before us, but he also had the benefit of some oral testimony, which this Court has not heard or read. In addition, he had the advantage, not given to this Court, of seeing in person almost all the directors and quite a number of persons interested in the affairs of the involved bank. It is apparent from the record here that he was very patient in listening to all that was to be said by any interested party. His decree shows that he went thoroughly into the whole situation. We must hold that he exercised the great power intrusted to him with commendable caution, and we cannot decide that there was any abuse of the discretion given to him. So, all exceptions, which question the deci-

sion of the Circuit Judge in declaring that there should be a receivership, are overruled.

The other two matters to be disposed of are so closely related, in so far as the law is concerned, that they may be considered together. One is the imputed error in the refusal to name Mr. James, the former president and cashier, and the then "liquidating agent," as the receiver. The other is the error charged in the appointment of Mr. Harley to the place.

The power of the Circuit Judge to designate a receiver is, clearly, a matter of discretion; perhaps even of more enlarged discretion than that of deciding in the first instance whether or not there should be a receivership. Even when the bank examiner applies to the Court for a receiver's appointment for an unsound bank, the Court is not required to appoint the examiner's nominee, or even the examiner himself; and this discretion extends to the appointment of a new receiver when the old receiver has been removed. *Ex parte Faust,* 96 S. C., 411; 81 S. E., 7.

This Court has held that a master in equity should not be appointed (*Kilgore v. Hair,* 19 S. C., 486. *Allen v. Cooley,* 60 S. C., 353; 38 S. E., 622); and that a Clerk of the Court should not be appointed (*White v. Britton,* 72 S. C., 175; 51 S. E., 547); and that it was improper to name as a receiver of an insolvent farmer, the agent of a pressing creditor (*Virginia-Carolina Co. v. Hunter,* 84 S. C., 214; 66 S. E., 177).

In the case last cited, this language was used in the opinion:

"The rule is that the Court ought to appoint a receiver entirely impartial. There may be cases requiring a departure from this rule, but we do not think this is one of them. * * * No special fitness or peculiar circumstances are shown which might justify the appointment of one so closely connected with one of the parties in interest."

The general rule as to the advisability of appointing persons connected with a corporation is this:

"Officers and stockholders of a corporation have been recognized as proper appointees, and there is generally no inflexible rule rendering such persons absolutely ineligible or disqualified to be receivers of the corporation merely by reason of their relation to the corporation. *The practice of making such appointments has been disapproved, however, and the Courts have refused to designate such persons as receivers, unless the case is exceptional and urgent and the parties interested consent thereto, since receivers should be impartial between the parties in interest, and have held them to be improper persons to be appointed; but often this attitude of the Courts against the appointment of such persons as receivers is affected by the consideration of other circumstances, such as the connection of the person proposed with the misfortune of the company.* Where the officer is well qualified and the parties desire it, and the misfortunes of the company are not attributable to reckless management on his part, he may be properly appointed receiver." 34 Cyc., 143. (Italics added.)

As to the refusal to appoint Mr. James, however, even if this Court should be of the opinion that the Circuit Judge should have named him to the position, we are unable to see wherein we could give, as to that particular matter, the relief sought by the appellants. If this Court were to hold that the appointment of Mr. Harley was an abuse of the judge's discretion, we could not go to the extent of requiring the Circuit Judge to appoint Mr. James. The choice between the two is not with us. The power of appointment lies with the Circuit Judge. This Court cannot direct him as to whom he should appoint. If it were held in any instance that the Circuit Judge had appointed some improper person, the only thing this Court could do would be to set aside the appointment made and

direct the Court below to fill the vacancy, letting the Circuit Judge exercise his right to name some other person.

While this Court, as indicated, is without power to direct the Circuit Court to appoint Mr. James, we are empowered to pass upon the appointment of Mr. Harley. The appellants make no attack, save one, upon the appointee. They charge that since he was an attorney in the causes heard by the Circuit Judge, involving the appointment of a receiver, that it was improper for him to be named to the office. We have no case in our reports, so far as we know, which touches this particular question; the law, as stated above, from *Virginia-Carolina Chemical Co. v. Hunter,* however, has some bearing. The general rule, as stated by Cyc., is this:

"The mere fact that one is a solicitor or practising barrister, being in no way connected with the particular parties or subject-matter, does not disqualify him to be receiver; but solicitors and counsel in a cause are not proper persons to be appointed receivers therein, and the same is true of one connected with counsel for one of the parties." 34 Cyc., 143.

In a Virginia case, where objection was raised to the appointment as receiver of the attorney for the complainant, it appeared that two receivers had been appointed, the other being the attorney for the defendant, and the Supreme Court of that State held there was no abuse of discretion. *Shannon v. Hanks,* 88 Va., 338; 13 S. E., 437.

We think it well to lay down the general rule, that, unless, all interested parties consent thereto, the attorney of a party actively engaged in securing a receivership or in opposing the same should not be named as receiver in a cause. There should be, however, exceptions reserved as to this rule.

We are impressed with the force of this announcement:

"A receiver should be honest and capable, and in

selecting such officer the Court will give due consideration not only to his quality of indifference, but also to his business ability and his fitness with respect to the character of the property which is to come under his care and the duties he will be required to perform in its management and conservation." 34 Cyc., 145.

The record in this cause shows that Mr. Harley became connected with the matters involved as an attorney of the State Bank Examiner, who is charged with the responsible duty of protecting the interests of depositors, creditors, and stockholders of banking institutions. The examiner thought there ought to be a receivership. He did not desire the position himself. When he asked for the appointment of a receiver, he was authorized and empowered by Section 3985, Vol. 3 of the Code, to ask for the appointment of himself or some other person as receiver. He suggested to the Court the appointment of Mr. McCrae. There was opposition to this nomination on the part of the directors and many of the depositors, who are appellants here. The Circuit Judge stated that ordinarily he would be guided by the recommendation of the examiner, but that with the purpose of preventing friction and discord, he would not appoint Mr. McCrae. Mr. Harley was requested to serve by the Circuit Judge, and the fact that he was not an applicant for the position should be some recommendation. Judge Mann, who is well acquainted with Mr. Harley, in his decree, spoke of him in this language:

"He is a man of the highest character. He is experienced in business and banking. He is very friendly in his attitude to those contending for the appointment of Mr. James. He has no interests in the bank, nor has he any relationship by blood or marriage with any one or either of the contending factions. I believe he will be conservative in all his acts in liquidating the affairs of the bank, and while pressing claims with proper vigor, will not unduly

press those in hard circumstances where indulgence should be granted."

There is nothing in the record before this Court that casts any doubt whatever upon the compliments paid Mr. Harley by the Circuit Judge. In addition, he is well known to the members of this Court as an attorney of high standing in this State. In our opinion, he measures up to the standing laid down in Cyc. as to the fitness required of a receiver. His connection as an attorney in the matters involved here is not such as to disqualify him, under the rule referred to there. The appointee seems to come within the rule of the *Hunter case*. It is clear to us that there was no abuse of discretion on the part of the Circuit Judge in making his appointment.

The judgment of this Court is that the decree of Circuit Judge Mann be, and the same is, hereby affirmed.

MR. CHIEF JUSTICE WATTS and MESSRS. JUSTICES COTHRAN and STABLER concur.

MR. JUSTICE CARTER disqualified.

MR. JUSTICE COTHRAN: The statement quoted from the *case of Ex parte Browne* must be considered in connection with the fact therein, that proceedings under Section 3981 were abandoned. It should not be construed as holding that to be the only condition under which resort may be had to Section 3985.